JAMES MITCHELL, Plaintiff-Appellant, v. JEWEL FOOD STORES, division of Jewel Companies, Inc., Defendant-Appellee.

First District (3rd Division)   No. 1—88—2900

Opinion filed September 27, 1989.—Rehearing denied October 25, 1989.

RIZZI, J., dissenting.

Lonny Ben Ogus, of Chicago, for appellant.

Kovar, Nelson, Brittain & Sledz, of Chicago (Marcia E. Goodman, of counsel), for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, James Mitchell (Mitchell), appeals from an order of the trial court granting the motion for summary judgment of defendant, Jewel Food Stores, division of Jewel Companies, Inc. (Jewel), and denying plaintiff's motion for summary judgment. Plaintiff's action alleged a breach of contract for defendant's terminating plaintiff's employment in violation of the policies set forth in an employment handbook. On appeal plaintiff contends that: (1) the employment manual formed a written contract between the parties under which plaintiff's employment was not terminable at will; (2) a prior final and unappealed order of the circuit court on administrative review which held that plaintiff's actions did not constitute misconduct estopped defendant from asserting in the instant action that plaintiff was guilty of misconduct sufficient for termination; and (3) the trial court erred in ruling that defendant could inconsistently and selectively enforce its employment policies.

For the reasons stated below, we affirm the judgment of the circuit court.

The record indicates that plaintiff was employed by defendant as a security guard in Jewel's southeast Chicago area stores from November 1976 until his termination on August 8, 1983, for submission of false time records. Plaintiff worked at various stores and his hours and days of work varied weekly. Plaintiff received his weekly schedule orally from a supervisor. Plaintiff was required to sign a "sign-in log" each day stating the time he arrived at and left work. In addition, plaintiff was required to file a time card every Saturday for the week just ending. Plaintiff was paid an hourly wage based on the time cards he submitted.

On August 1, 1983, plaintiff worked from 2 p.m. to 10 p.m. at the Jewel store at 7707 South Cottage Grove. Plaintiff was scheduled to work on August 2, 1983, from 7 a.m. to 3 p.m. Plaintiff did not arrive at work on August 2, however, until around 7:30 a.m. In an affidavit plaintiff stated that he arrived late on August 2 because he was tired

from having worked late the night before and because he was taking medication. Plaintiff entered an arrival time of 7 a.m. on the sign-in log and also on his time card for August 2, 1983. When defendant discovered that the time card incorrectly indicated plaintiff's arrival time, a supervisor questioned plaintiff, who admitted he did not begin work on August 2 until 7:30 a.m. Plaintiff stated in his deposition that he filled in his time card for the week at the time he received his schedule and did not change the time on the card for August 2 after he arrived late. Plaintiff also stated that he signed the sign-in log later in the day on August 2, and not at the time he arrived. He filled in 7 a.m. on the log as the time he recalled he was scheduled to begin work.

During his employment plaintiff received from defendant a copy of Jewel's "Benefits and Policies for Security Officers." Plaintiff looked through the booklet and read some of it. The manual provides that "[v]iolation of any of the following policies will lead to disciplinary action, up to and including dismissal." One of the policies states, "All time cards and sign-in log books must reflect correct dates and times worked." The manual provides that an employee is under a probationary status for the first 90 days of employment, during which time he "may be discharged for any reason at the sole discretion of the employer." After the probationary period, an employee "shall not be suspended, discharged or otherwise disciplined without just cause, just cause to include but not be limited to the following: *** dishonesty or other misconduct in connection with work."

After his termination from employment with defendant, plaintiff sought unemployment compensation. The referee for the division of unemployment compensation of the Illinois Department of Labor and the Board of Review determined that plaintiff's "misconduct" made him ineligible for compensation benefits. Plaintiff appealed the decision by filing a complaint for administrative review in the circuit court of Cook County. On October 4, 1984, Judge Marilyn R. Komosa reversed the determination of the Board of Review of the Department of Labor. No appeal has been taken from that order.

On appeal in this court plaintiff initially asserts that the Jewel employment manual constitutes an employment contract under which plaintiff was not terminable at will. Further, plaintiff asserts that as a "permanent" employee who worked for defendant for seven years, he could be terminated only upon a showing of just cause.

■ The general rule is that if an employment agreement does not specify a definite duration, it will last as long as is mutually satisfactory and either party can terminate the employment at will without

liability for breach of contract. (*Crenshaw v. DeVry, Inc.* (1988), 172 Ill. App. 3d 228, 526 N.E.2d 474.) Where, however, more specific terms regarding grounds for discharge or other conditions are properly made part of the contract, then breach of those provisions may constitute a breach of contract. See *Crenshaw*, 172 Ill. App. 3d 228; *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.

In *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the supreme court held that for an employee handbook to create an enforceable contract, the handbook must meet the traditional requirements for contract formation, namely:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." (*Duldulao*, 115 Ill. 2d at 490.)

Plaintiff contends that in the instant case all three requirements of *Duldulao* were met. Defendant responds that plaintiff failed to prove the second and third requirements, since plaintiff failed to bring evidence to show that he specifically read the part of the manual regarding discipline of permanent employees.

■ The record indicates that plaintiff read through the employment manual, although plaintiff believed that he did not read the manual "thoroughly." Upon being questioned, however, plaintiff stated that he understood there was a company policy against falsifying a time card. Plaintiff stated that he knew that such falsification was improper. Further, plaintiff stated that he understood that if he broke a rule of his employer, he could be terminated.

We hold that the manual was sufficient to create a binding contract between the parties. Plaintiff understood that to falsify a time card was a breach of company policy, and that breach of a company rule could result in termination. Plaintiff was sufficiently aware that keeping proper time cards was one of his duties when he accepted employment from defendant and continued to work for defendant until his termination. Therefore, plaintiff brought sufficient evidence to show that the requirements of *Duldulao* were met, and that his employment could not be terminated at will insofar as the manual provided otherwise.

■ Plaintiff also contends that the prior decision by Judge Komosa that plaintiff did not commit "misconduct" to preclude him from receiving unemployment compensation estops defendant from asserting in the instant case that plaintiff committed misconduct sufficient for his termination. Plaintiff contends that the same standard of misconduct used in unemployment compensation cases is used by Jewel. Plaintiff asserts that misconduct in an unemployment case requires a deliberate act constituting a breach of an employee's duties and obligations to his employer. (*Wright v. Department of Labor* (1988), 166 Ill. App. 3d 438, 519 N.E.2d 1054; *Dotson v. Bowling* (1981), 102 Ill. App. 3d 340, 430 N.E.2d 44.) Similarly, Jewel's handbook states that an employee may be terminated for "dishonesty or other misconduct." Jewel supervisor Roy Mertens testified in his deposition that intent to commit an act is required in order for conduct of an employee to constitute "misconduct." Plaintiff contends, therefore, that in both an unemployment compensation case and in the instant case, "misconduct" requires that the employee intentionally commit the act which violates the rules.

We disagree. Section 602A of the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1987, ch. 48, par. 432(A)), applicable in unemployment compensation matters, defines "misconduct" as a "deliberate and willful violation of a reasonable rule or policy." Jewel's employment manual, on the other hand, states that a permanent employee may be discharged only for "just cause," such as "dishonesty or other misconduct." The manual does not provide for or require deliberate or willful conduct. Nor can it be assumed that the term "misconduct" as used in the manual has the same meaning as "misconduct" as used in the statute. The language of the employment manual does not in itself reference willful or deliberate conduct. Further, the testimony of Jewel's supervisor that the disciplinary rules in the manual require a showing of "intent" to be enforced is not sufficient to show that such a meaning was intended by the language of the manual.

In *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 879, the supreme court differentiated between the determination of "misconduct" under the Unemployment Insurance Act and the question of justifiable discharge. In *Jackson*, the plaintiff was discharged for drinking intoxicating liquor on the job. After the case was appealed to the lower courts, the supreme court held first that the finding of the administrative agency that the plaintiff's conduct violated company policy was not against the manifest weight of the evidence. The court then addressed the question of whether the plaintiff's con-

duct constituted "misconduct" which would disqualify her from receiving unemployment benefits (Ill. Rev. Stat. 1987, ch. 48, par. 432). The court found that the administrative decision that the plaintiff deliberately violated a reasonable rule of the employer was not against the manifest weight of the evidence. Therefore, the plaintiff's conduct also disqualified her from receiving unemployment benefits. *Jackson*, 105 Ill. 2d at 514.

In the instant case, unlike in *Jackson*, the circuit court found that plaintiff's conduct failed to constitute "misconduct" under the Act and therefore he was not precluded from receiving unemployment benefits. Further, as stated by the court in *Jackson*, "[E]very justifiable discharge does not disqualify the discharged employee from receiving employment [*sic*] benefits under the Act. An employee's conduct may be such that the employer may properly discharge him. However, such conduct may not constitute 'misconduct connected with his work' which disqualifies the employee from receiving unemployment benefits." (*Jackson*, 105 Ill. 2d at 507.) We find that the instant case involved a justifiable discharge notwithstanding plaintiff's entitlement to unemployment compensation benefits.

The circumstances of plaintiff's employment and the nature of his position with Jewel support this result. Plaintiff was required to place his signature on a "sign-in log" each day he worked. Further, plaintiff filled out and filed a time card each week. Plaintiff was paid on an hourly wage based upon the time cards he submitted to Jewel. Under these circumstances, plaintiff would be aware that accurate and timely completion of his time records was essential. Jewel relied upon those records to pay plaintiff his hourly wage for the specific number of hours he worked. Further, the nature of plaintiff's position with Jewel required promptness. As a security guard, plaintiff's duties would include protecting the Jewel employees and merchandise from danger of theft or other harm. In order to be effective, such a position necessarily requires that a security guard be on duty at all relevant times. The employer would reasonably require and expect the employee to be on duty when he was assigned for duty. An employer relying on the presence of an employee could suffer great financial loss, or more importantly, physical harm to other employees, by relying on the presence of the unreported absent employee. The employer is not afforded, in this situation, the option of reassigning another employee to perform the absent employee's duties.

Plaintiff contends, however, that *res judicata* estops defendant from asserting that plaintiff's acts constituted misconduct sufficient to justify termination. Plaintiff asserts that the former adjudication by

the administrative body that plaintiff's acts did not constitute "misconduct" under the Act is conclusive in the instant matter that plaintiff was not guilty of sufficient misconduct for termination. Plaintiff also sets forth the doctrine of estoppel by verdict.

■ The doctrine of *res judicata* bars a second adjudication where there is a former adjudication on the merits by a court of competent jurisdiction. (*Martinez v. Admiral Maintenance Service* (1987), 157 Ill. App. 3d 682, 510 N.E.2d 1122.) *Res judicata* acts as an absolute bar to a subsequent action involving the same claim, demand, or cause of action, where the parties and subject matter also are the same. (*Martinez*, 157 Ill. App. 3d at 684; *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620.) Where the requirements for *res judicata* have been met, concerning identity of parties, subject matter, and cause of action, any contention not raised by the plaintiff in the former action may not be raised in the later action. *Martinez*, 157 Ill. App. 3d at 684, citing *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 454 N.E.2d 684.

■ Estoppel by verdict is a branch of *res judicata* that provides that where a particular question or fact has been adjudicated in a former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties or their privies, its adjudication in the first cause will, if properly presented and relied upon, be conclusive of the same question in the later suit, regardless of whether or not the cause of action is the same in both suits. *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 788-89, 370 N.E.2d 564, *aff'd and remanded* (1979), 74 Ill. 2d 164, 384 N.E.2d 365.

■ We find that neither *res judicata* nor estoppel by verdict precludes defendant's assertion. Judge Komosa was not required to, and did not, address the issue of whether "misconduct" under the Act had the same meaning as "misconduct" sufficient to justify termination. Further, as we have found, whether plaintiff committed "misconduct" under the Act is not the same question as plaintiff raised in the instant suit, namely, whether his termination was based on "just cause," which may include "dishonesty or other misconduct" as set forth in Jewel's manual. That plaintiff's conduct failed to constitute willful and deliberate action under the Act does not mean that plaintiff's conduct was not sufficient to constitute "dishonesty or other misconduct" as being just cause for plaintiff's termination from employment. (See *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) Therefore, defendant was not estopped from raising as a defense in the instant case that plaintiff's conduct was sufficient to

justify termination.

▮▮ ▮ Plaintiff also contends that the circuit court erred in ruling that defendant could inconsistently and selectively enforce its rules and policies. The trial court held:

"[A]s a matter of law *** when the contract does not prescribe the penalty but merely prescribes a range of penalty for the offense and provides no objective standard for a determination of where within that range the penalty will be, then in that particular case, it is totally within the discretion of the employer to exercise his discretion in prescribing the penalty ***.

It need not be constant with other penalties that were prescribed for like kind of offenses."

Plaintiff asserts that in an employment contract case, the burden is on the employer to show that the employee has failed to perform his obligations under the contract and was discharged for cause. (*Lukasik v. Riddell, Inc.* (1983), 116 Ill. App. 3d 339, 452 N.E.2d 55; *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 410 N.E.2d 604.) Plaintiff asserts that whether defendant always terminated an employee for an incorrect time card or failed to terminate the employee under those circumstances was a disputed material fact which precluded summary judgment. Plaintiff points to the affidavit of Clarise Cridell, a former Jewel employee, which indicates that another employee had not been terminated after filling in a time card with the incorrect hours worked. Plaintiff cites several cases from other jurisdictions for the proposition that an employer who selectively enforces a rule cannot assert that breach of the rule is breach of the employment contract, but rather that the employee is entitled to have the fact finder determine whether the violation of the rule constitutes good cause for termination. (*Toussaint v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 292 N.W.2d 880; *Leikvold v. Valley View Community Hospital* (1984), 141 Ariz. 544, 688 P.2d 170; *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622; *Vander Toorn v. City of Grand Rapids* (1984), 132 Mich. App. 590, 348 N.W.2d 697.) Further, plaintiff cites *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 410 N.E.2d 604, for the proposition that when an employer knows of acts of misconduct by an employee and does not terminate the employee it has condoned the conduct.

We note that *Foster* also provides that if the misconduct continues until the time of discharge, no condonation takes place. (*Foster*, 88 Ill. App. 3d at 466.) Further, the holding in *Foster* pertains to condoning conduct of a single employee who challenges his termination. *Foster* does not hold that an employer's alleged condoning of the conduct of

other employees necessarily has an effect on the discharge of the employee who challenges his discharge. Further, the cases from foreign jurisdictions cited by plaintiff are distinguishable from the instant case. For instance, in *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622, it was undisputed that a disciplinary provision in an employment handbook was applicable and enforceable between the parties. The only question before the court was that the provision was not followed. In *Toussaint v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 292 N.W.2d 880, the employees were contesting the employer's failure to comply with the provision of an employment manual that they must be discharged only for "just cause," where they had been promised job security from the employer. In *Leikvold v. Valley View Community Hospital* (1984), 141 Ariz. 544, 688 P.2d 170, the parties disputed the reason for discharge, and the court found that the language of the employment manual was ambiguous regarding the terms of the parties' contract. In any event, the cases from foreign jurisdictions have no binding effect on this court.

Defendant challenges the propriety and sufficiency of the affidavit offered by plaintiff, contending that the affidavit provides no statement of personal knowledge. Since Cridell was not in a management position for defendant, there is no basis to believe that she would have knowledge of the facts contained in her affidavit. The rule is that where it appears that an affidavit is based on the personal knowledge of the affiant and a reasonable inference is that the affiant could competently testify at trial to the contents of the affidavit, there is no requirement that the affiant specifically attest to those facts. (*Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 417 N.E.2d 621; 107 Ill. 2d R. 191(a).) We find that a reasonable inference can be drawn that Cridell would have within her personal knowledge facts regarding another employee's incorrectly filling in a time card and not being terminated. It is not unreasonable to conclude that Cridell could have gained knowledge of the situation described through her employment by defendant and contact with other employees. We will assume for purposes of plaintiff's argument on appeal that the affidavit was sufficient.

The construction, interpretation, and legal effect of a contract are questions of law to be determined by the trial court. (*Kardolrac Industries Corp. v. Wang Laboratories, Inc.* (1985), 135 Ill. App. 3d 919, 482 N.E.2d 386.) Further, a reviewing court may determine such issues independently of the circuit court's determination. (*Kardolrac Industries Corp.*, 135 Ill. App. 3d at 925.) In the instant case, plaintiff admitted to his supervisor that he submitted an incorrect time card

and signed the sign-in log showing an incorrect time. In view of plaintiff's admission and the clear and unambiguous language of the employment manual regarding discharge for submission of incorrect time cards, we find no reason to disturb the finding of the trial court. The court correctly found that the employment manual allowed defendant, the employer, discretion to determine the penalty for plaintiff's filing a false time card, and that such penalty could include termination. Therefore, we find that there was no question of fact remaining that defendant acted within its rights under the contract in terminating plaintiff. Accordingly, we find that the trial court properly entered summary judgment in favor of defendant.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

WHITE, J., concurs.

JUSTICE RIZZI, dissenting:

I agree with the majority's conclusion "that the manual was sufficient to create a binding contract between the parties" and that plaintiff's "employment could not be terminated at will insofar as the manual provided otherwise." (189 Ill. App. 3d at 454.) However, I disagree with the result reached by the majority.

The manual provides:

"J. Discipline

During an employee's probationary period, that is, during his first ninety (90) days of employment, an employee may be discharged for any reason at the sole discretion of the employer. After an employee has completed the probationary period, such employee shall not be *** discharged *** without just cause, just cause to include but not be limited to the following: *** dishonesty or other misconduct in connection with work *** ."

Under the clear terms of the manual, Jewel no longer had the unfettered discretion to discharge the plaintiff. The plaintiff could only be discharged for just cause, which included dishonesty or other misconduct in connection with work. Dishonesty means a disposition to defraud or deceive. (See Webster's Third New International Dictionary 650 (1981).) Plainly, the record does not establish, and the majority does not conclude, that Jewel was entitled to a summary judgment on the basis that there was dishonesty as a matter of law. Thus, the

issue here is whether plaintiff's pertinent conduct constituted "other misconduct in connection with work" as a matter of law within the context of the relevant provision of the manual.

The manual does not define misconduct. However, it is reasonable to presume that terms in a manual concerning the same subject matter are governed by one spirit and policy. Also, terms in the same sentence of a manual should be considered and construed with reference to each other so that they may be given an intended harmonious effect. Here, under the subject matter of "Discipline" in the manual, the pertinent terms are "dishonesty or other misconduct." Since the terms "dishonesty and other misconduct" are to be considered and construed with reference to each other, I believe that other misconduct, like dishonesty, as used in the manual means consciously and knowingly doing something wrong in connection with work as opposed to doing something mistakenly or inadvertently.

In addition, at the very least, the term "other misconduct" in the manual is ambiguous. Ambiguous contractual language is generally construed against the drafter of the language—in this case Jewel. In *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the court considered the contractual rights of an employee that were created by her employer's employee handbook. The court stated:

> "A more difficult question is whether or not defendant complied with the provisions of the handbook. ***
>
> *** The handbook states that an employee may be terminated without notice during the '*initial* probationary period' (emphasis added), a period which ends '[a]t the end of 90 calendar days since employment.' ***
> ***
>
> Ambiguous contractual language is generally construed against the drafter of the language (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 116; *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 2d 324, 333), and in the absence of evidence to the contrary we must conclude that the 'designated probationary period' does not divest an employee of rights vested at the end of the 'initial probationary period.'" *Duldulao*, 115 Ill. 2d 482, 492-93, 505 N.E.2d 314, 319.

In the present case, in the absence of evidence to the contrary, the term "other misconduct" in the manual must be construed against Jewel and not, as the majority construes the term, in favor of Jewel. Moreover, the evidence aliunde supports plaintiff's interpre-

tation and not Jewel's interpretation of the term other misconduct as it is used in the manual. A Jewel supervisor, Roy Mertens, testified in his deposition that intent to commit an act is required in order for conduct of an employee to constitute "misconduct." The majority misdeems the import of the supervisor's testimony because it construes the undefined term "other misconduct" in the manual against the plaintiff rather than against the drafter of the manual, Jewel. This is evident by the majority's statement that "the testimony of Jewel's supervisor that the disciplinary rules in the manual require a showing of 'intent' to be enforced is not sufficient to show that such a meaning was intended by the language of the manual." 189 Ill. App. 3d at 455.

In addition, the majority concludes: "In view of plaintiff's admission and the clear and unambiguous language of the employment manual regarding discharge for submission of incorrect time cards, we find no reason to disturb the finding of the trial court." (189 Ill. App. 3d at 460.) The majority's conclusion is based upon two unfounded premises.

First, plaintiff did not admit that his submission of an incorrect time card and signing the sign-in log showing an incorrect time constituted misconduct which would warrant his discharge pursuant to the provisions of the manual. Rather, plaintiff merely admitted that he made a mistake of one-half hour on his time card and sign-in log on a single occasion. According to plaintiff, his acts constituted a simple mistake and inadvertence which are not sufficient to discharge him under the terms of the manual. Secondly, it is simply not true that there is clear and unambiguous language in the employment manual regarding discharge for submission of incorrect time cards based on an admitted honest mistake. Instead, as the majority opinion itself demonstrates, the pertinent provision of the manual provides that plaintiff could only be discharged for cause, which would include dishonesty or other misconduct in connection with work. Merely making a mistake is not misconduct.

In the last paragraph of its opinion, the majority states that it agrees with the trial court that Jewel had the discretion to discharge plaintiff for filing a false time card. The fact is that the record does not establish that plaintiff filed a false time card within the meaning of dishonesty or other misconduct as used in the manual. Rather, the record establishes that plaintiff merely filed a time card with an honest mistake on it. If the majority is correct, virtually every mistake that is made in connection with one's employment would amount to dishonesty or other misconduct, and it would give the employer the

absolute discretion to discharge the employee regardless of the employee's length of service. Thus, any job protection that longtime Jewel employees have under the manual would be illusory.

The majority's opinion is great for management but, unfortunately, inimical to labor. I believe that the majority opinion is not merely wrong, it is an anachronism and unjust. In my opinion, with the advent and usage of employee handbooks and manuals which contain terms and conditions regarding discharge, the days when employers retained and discharged employees *ad libitum* are gone. (See *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.) However, one would not believe that those days are gone by reading the majority opinion.

Accordingly, I would reverse the summary judgment in favor of Jewel and reverse the denial of plaintiff's motion for summary judgment. I would also grant plaintiff's motion for summary judgment and remand for further proceedings in the trial court.