GERALD E. KENNEDY, Plaintiff-Appellee, v. FOUR BOYS LABOR SERVICE, INC., Defendant-Appellant.

First District (1st Division)    No. 1—93—2693

Opinion filed November 13, 1995.

James S. Gordon and Edward Slovick, both of Chicago, for appellant.

Thomas G. Krebs, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Four Boys Labor Services, Inc., appeals from two orders of the circuit court of Cook County entered July 2, 1993. In the first order, the trial court determined that the claim of the plaintiff, Gerald Kennedy, was not barred by the doctrines of *res judicata* and collateral estoppel, and granted judgment in favor of plaintiff and against defendant in the amount of $68,384.98, plus costs. In the second order, the trial court denied defendant's motion for leave to file *instanter* a verification of its response to plaintiff's first request for admissions of fact and genuineness of documents. For the following reasons, we affirm the judgment of the trial court.

The record reveals the following relevant facts. Plaintiff became employed by defendant as a sales manager in August 1989. On April 5, 1990, plaintiff suffered a neck injury as a result of a work-related automobile accident. On May 8, 1990, plaintiff and defendant entered

into a written employment contract which, *inter alia,* set forth the terms of plaintiff's employment as follows:

"1. *TERMS OF EMPLOYMENT*: Employee shall be employed under the terms of this contract. Employer or Employee may at any time terminate this contract on not less than 21 days written notice to the other. In the event of such termination the commission payment continuation set forth in paragraph 8 below shall apply.

* * *

5. *SALARY*: Employer shall pay employee a weekly salary of $500.00. *** Employee shall also receive hospital and medical insurance benefits which Employer shall, from time to time, provide to other employees.

* * *

8. *CONTINUATION OF COMMISSIONS*: In the event that Employee shall voluntarily terminate his employment hereunder, he shall not be entitled to receive any commissions on customer accounts billed at any time subsequent to the date of voluntary termination. If Employer shall terminate Employee's employment hereunder, Employee shall be entitled to receive full commissions on all Employee's accounts for a period of twelve (12) months following termination of employment."

On January 21, 1991, plaintiff filed an action against defendant for breach of contract (count I) and retaliatory discharge (count II). In count I, plaintiff alleged that he was discharged on August 29, 1990, in violation of his employment contract. Plaintiff alleged that defendant breached the contract by terminating him without giving him the requisite 21 days' notice and by not paying him his salary and commissions pursuant to the contract.

In count II, plaintiff alleged that defendant discharged him in retaliation for his pursuit of a worker's compensation claim for injuries sustained in the April 5, 1990, accident, and a wage claim for back wages for the two-week period ending August 4, 1990, to which he was entitled but not paid.

The record indicates that prior to the filing of plaintiff's lawsuit, a claims adjudicator for the State of Illinois Department of Employment Security (DES) determined that plaintiff was eligible for unemployment compensation benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/700 (West 1992)). Section 601(A) of the Act provides in pertinent part: "An individual shall be ineligible for benefits for the week in which he has left work voluntarily

without good cause attributable to the employing unit." (820 ILCS 405/601(A) (West 1992).) Section 601(B) of the Act sets forth an exception from disqualification of benefits to an individual who has left work voluntarily because he is deemed physically unable to perform his work by a licensed physician.

Defendant appealed the finding of the claims adjudicator on December 4, 1990, and on February 15, 1991, a DES referee held a review hearing. On February 21, 1991, the DES referee issued a decision affirming the determination of the claims adjudicator, finding, based on both plaintiff's and defendant's testimony, that in early August 1990, plaintiff's injuries caused him so much pain that his doctor advised him that he should neither work at his office nor make field calls in his car. Plaintiff stopped reporting for work, although he did make occasional work-related phone calls from his home. Defendant offered him an opportunity to take an unpaid leave of absence but plaintiff refused.

The referee concluded that when plaintiff stopped reporting for work, he gave no indication when or if he would ever return. Thus, defendant had no alternative but to treat plaintiff's extended absence as job abandonment. The referee found that plaintiff did leave work voluntarily, for reasons not attributable to defendant. However, because plaintiff was deemed physically unable to work by a physician, and he so informed his employer, he qualified for benefits under the exception set forth in section 601(B)(1) of the Unemployment Insurance Act. (820 ILCS 405/601(B)(1) (West 1992).) Defendant did not appeal the finding of the referee to the circuit court of Cook County.

On April 9, 1992, defendant filed a motion for summary judgment in plaintiff's circuit court action, arguing that plaintiff's civil claim was barred by the doctrine of *res judicata*, because the DES referee in plaintiff's unemployment insurance claim determined that plaintiff had voluntarily abandoned his job. Thus, defendant argued, plaintiff could not claim breach of contract or retaliatory discharge because the referee already decided the issue of liability for termination of plaintiff's employment. Defendant attached the affidavit of Mark Kozin, defendant's vice-president and son of defendant's late president Erwin Kozin, who stated that plaintiff was fully compensated under the terms of his employment agreement. The trial court denied defendant's motion.

On February 11, 1993, plaintiff filed his first request for admissions of fact and of genuineness of documents. On April 19, 1993, defendant filed an unverified response.

A bench trial commenced on July 1, 1993. At that time, defendant presented a motion for leave to file *instanter* a verification of its

response to plaintiff's first request for admissions of fact and of genuineness of documents. The trial court denied defendant's motion and admitted all of the facts stated in plaintiff's request to admit.

At trial, plaintiff testified that he began working as a sales manager for defendant, a supplier of temporary labor, in late August or early September 1989. Plaintiff's responsibilities included establishing new accounts, necessitating "cold calling" to find new clients. Plaintiff did 90% of his work by the telephone. When plaintiff first started working for defendant, he spent four to five hours a day in defendant's offices. Plaintiff also worked out of his apartment making sales calls. Plaintiff testified that as of August 1990, he was responsible for approximately $57,000 in sales per week.

On April 5, 1990, plaintiff was driving his car to the office following a meeting with a customer, when his car was hit from the rear. Plaintiff sustained injuries to his neck, and he received medical attention. Plaintiff was hospitalized from July 3, 1990, through July 8, 1990. After his release, plaintiff's physician prescribed bed rest. Later in July, plaintiff's symptoms returned, and he underwent a series of treatments.

Plaintiff last worked at defendant's office on August 6, 1990. Plaintiff subsequently learned that he needed to continue bed rest, which constituted lying down for 15 to 20 minutes of every hour, and using a traction device. During his period of bed rest, plaintiff continued to make frequent telephone sales calls for defendant. Plaintiff entered into evidence telephone records, showing the clients he contacted during this period of time. Plaintiff stated that from the period July 15, 1990, through August 1990, he established eight new accounts.

On July 26, 1990, plaintiff filed a worker's compensation claim against defendant. On August 15, 1990, plaintiff filed a complaint with the Illinois Department of Labor for unpaid wages and commissions for the period February 26, 1990, through July 29, 1990.

On August 29, 1990, plaintiff received a telephone call at home from Erwin Kozin. Kozin said that he received information on the worker's compensation and Department of Labor cases plaintiff filed against him. Kozin said, "What are you doing to me? You're ruining my company," and verbally terminated plaintiff from his position. Kozin stated: "You're out. You're out of here. You're never coming back."

In response, plaintiff sent a letter to Kozin dated August 30, 1990, stating: "I would like to make it clear to you that I do not resign my position with Four Boys Labor Services, Inc." Plaintiff subsequently received a termination letter from Kozin, dated August 30, 1990 (plaintiff's exhibit No. 4), stating as follows:

"This letter is to advise you that your employment with this company is hereby terminated effective August 31, 1990. Your employment is terminated for the following reasons:

1. You have virtually abandoned your job. Your attendance at work has been sporadic. You have not been present at all times or out soliciting customers as required by your employment contract;

2. You have quoted fees which are below the scale which I have fixed, in violation of company policy; and

3. You have disparaged or discouraged one or more customers from doing business with the company.

For the foregoing reasons, I believe that you have breached your employment contract with the company and have damaged the company as a result."

Plaintiff stated that he did not abandon his job and denied the allegations of the letter. Plaintiff subsequently received notification of health insurance cancellation.

The following correspondence was also admitted into evidence: (1) a letter dated August 14, 1990, from plaintiff's physician, Dr. Robert Segura, to defendant, advising that plaintiff was under his medical supervision, and that he had advised plaintiff not to work while undergoing treatment: (2) a follow-up letter to Erwin Kozin from plaintiff dated September 19, 1990, requesting payment in full for past-due commissions and salary for August 1990, and for continued commissions through July 1991, and reiterating that he did not voluntarily terminate his employment; and (3) a letter dated September 20, 1990, from defendant to defendant's insurance carrier, stating that plaintiff's last date of employment was July 15, 1990.

Mark Kozin, defendant's vice-president, testified that Erwin Kozin decided to reduce plaintiff's salary on his July 7, 1990, paycheck as a result of the reduction in plaintiff's hours. Mark admitted that there was nothing in plaintiff's employment agreement which permitted a salary reduction. Mark admitted that plaintiff was not paid his contractual salary of $500 weekly for August 1990.

On July 2, 1993, the trial court entered an order finding that defendant's unverified response of April 19, 1993, was filed more than 28 days after service of plaintiff's first request for admissions of fact and of genuineness of documents, denying defendant's motion, and ordering defendant's unverified response stricken.

At the conclusion of the trial on July 2, 1993, the trial court entered a judgment order, finding as to count I of plaintiff's complaint that: (1) plaintiff did not voluntarily terminate his employment with the defendant; (2) defendant did terminate the employment of plaintiff; (3) plaintiff is not entitled to any back salary; (4)

plaintiff is entitled to any unpaid commissions for the period of February 26, 1990, through August 31, 1990, on accounts for which he should have been paid commission but was not paid; and (5) plaintiff is entitled to commission payments from the defendant for the 12-month period following his termination on August 30, 1990, pursuant to paragraph 8 of the employment contract.

The trial court further found that plaintiff's termination by defendant was not in retaliation for the filing of either a worker's compensation claim or a claim with the Illinois Department of Labor.

The trial court made a legal finding that the DES referee's decision dated February 15, 1991, did not bar the findings of fact of the trial court either through *res judicata* or collateral estoppel. The trial court then entered judgment in favor of plaintiff as to count I, in the amount of $68,384.98 for unpaid commissions, plus costs, and in favor of defendant as to count II.

Defendant filed a timely notice of appeal of the trial court's orders of July 2, 1993, on July 28, 1993.

Initially, defendant contends that the trial court erred in finding that plaintiff's action was not barred by *res judicata* and collateral estoppel, and in entering judgment in favor of plaintiff for unpaid commissions. Defendant argues that the finding of the DES referee conclusively determined that plaintiff voluntarily left his employment; therefore, plaintiff is not entitled to recover any monies under his employment contract, which entitles him to commissions only if defendant terminated plaintiff's employment.

■ The doctrine of *res judicata* precludes relitigation of claims or issues previously decided. It is divided into two branches: estoppel by judgment, *res judicata*, and estoppel by verdict, collateral estoppel. (*Powers v. Arachnid, Inc.* (1993), 248 Ill. App. 3d 134, 137, 617 N.E.2d 864.) This court has barred subsequent causes of action by applying the doctrines of *res judicata* or collateral estoppel to administrative decisions.

Defendant argues that an adjudication by the DES determining the reason for the termination of a claimant's employment bars relitigation of that same issue in a subsequent civil action by the employee against his employer. In support of its contention, defendant relies on the cases *Colvett v. L. Karp & Sons, Inc.* (1991), 211 Ill. App. 3d 731, 570 N.E.2d 611, *Martinez v. Admiral Maintenance Service* (1987), 157 Ill. App. 3d 682, 510 N.E.2d 1122, and *Osborne v. Kelly* (1991), 207 Ill. App. 3d 488, 565 N.E.2d 1340.

In *Martinez*, the board of review for the Department of Labor disqualified the plaintiff from receiving unemployment benefits based on a finding that she was discharged for continued tardiness. The

plaintiff subsequently filed a complaint for retaliatory discharge asserting wrongful discharge for exercising her rights under the Workers' Compensation Act. (820 ILCS 305/1 *et seq.* (West 1992)).) To prevail on a claim for retaliatory discharge, a plaintiff must prove that she was discharged in violation of a clearly mandated public policy. This court found that the identical issue as to why the plaintiff was fired was presented in both the proceedings for unemployment compensation and on her claim for retaliatory discharge. Since the board of review previously determined that plaintiff was discharged for excessive tardiness, she was precluded from proving that she was discharged in violation of a clearly mandated public policy. The court in *Martinez* found that *res judicata* barred the plaintiff's cause of action for retaliatory discharge and affirmed the dismissal of the plaintiff's complaint on that basis.

Similarly, in *Colvett*, the plaintiff filed an unemployment claim with the DES. After a hearing, the board of review reversed the referee's decision and held that the plaintiff's actions in carrying furniture while allegedly disabled and accepting worker's compensation benefits was a "willful injury" to the employer which justified termination. Plaintiff subsequently filed a complaint for retaliatory discharge. Applying *Martinez*, this court held that the doctrine of *res judicata* barred the plaintiff's cause of action since "the parties, the subject matter, and the cause of action were the same in the DES proceeding as in the present action" for retaliatory discharge. *Colvett*, 211 Ill. App. 3d at 733.

This court examined the identical issue in *Osborne* and determined that collateral estoppel barred the plaintiff's claim for retaliatory discharge. Since the DES board of review determined that the plaintiff voluntarily left his employment, he was barred from relitigating the issue of whether he was discharged by the employer. *Osborne*, 207 Ill. App. 3d at 492.

*Martinez, Colvett* and *Osborne* are distinguishable from the present case. In each case, the plaintiff was either discharged for cause or a determination was made by the DES that the plaintiff had voluntarily left his employment and was therefore ineligible for unemployment benefits. Each plaintiff filed a subsequent complaint for retaliatory discharge, which was dismissed. None of those cases address the issue of a separate civil action for breach of an employment contract.

In fact, in *Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 172, 568 N.E.2d 827, our supreme court determined that *res judicata* did not bar an employee's claim for breach of contract in light of an administrative decision awarding unemployment compensation. The court reasoned:

"[T]he circuit court which heard plaintiff's unemployment compensation appeal 'was not required to, and did not, address the issue of whether "misconduct" under the [Unemployment Insurance] Act had the same meaning as "misconduct" sufficient to justify termination. *** [W]hether plaintiff committed "misconduct" under the Act is not the same question as plaintiff raised in the instant suit, namely, whether his termination was based on "just cause," which may include "dishonesty or other misconduct" as set forth in [defendant's] manual.' " *Mitchell,* 142 Ill. 2d at 172, quoting *Mitchell v. Jewel Food Stores* (1989), 189 Ill. App. 3d 450, 457.

In *Powers,* the plaintiff had an employment contract with defendant, Arachnid. Subsequently, the parties supplemented plaintiff's employment contract in the event of plaintiff's severance after a significant change of ownership of Arachnid. The severance agreement provided that Powers would be paid severance pay equal to six months of his present salary should he be terminated by new management. Several months after entering into this agreement, Powers was terminated by the present owners, for the stated cause of a "steady decline in his performance level." *Powers,* 248 Ill. App. 3d at 136.

Powers filed a seven-count complaint against Arachnid, seeking damages for breach of the severance contract in count I. Defendant moved to dismiss count I based on a circuit court decision confirming a decision by the DES board of review determining that plaintiff was not qualified for unemployment insurance benefits because he was discharged for "misconduct" connected with his work as defined in section 602(A) of the Unemployment Insurance Act. (820 ILCS 405/602(A) (West 1992).) Defendant argued that Powers' action for breach of the severance agreement was barred by *res judicata* by virtue of the DES ruling. The trial court granted Arachnid's motion and Powers appealed.

On appeal, the *Powers* court determined that the rationale set forth in *Mitchell* seriously undermines the *Martinez* and *Colvett* decisions. The court found that the case was distinguishable from *Martinez, Colvett,* and *Osborne:*

"Plaintiff *** correctly cites *Mitchell* in support of his contention that the DES determination that plaintiff was discharged for misconduct connected with employment within the meaning of the Unemployment Insurance Act is not an essential element of his claim for breach of the severance agreement. Although the parties are the same in plaintiff's claim for unemployment compensation and for breach of the severance agreement, the causes of action are not identical, as determined by the *Mitchell*

court. The facts necessary to sustain a favorable judgment for breach of the severance agreement would be that the parties agreed to give plaintiff severance pay under certain terms and conditions, that those conditions were met, and that defendant failed to perform under the terms of the agreement. This evidence would not have sustained nor been material to a judgment for unemployment compensation. *** [T]he DES adjudication did *not* refer to or construe the terms of the severance agreement." (Emphasis in original.) (*Powers*, 248 Ill. App. 3d at 140.)

The *Powers* court similarly concluded that plaintiff's cause of action was not barred by collateral estoppel:

"Collateral estoppel precludes relitigation of an issue in a subsequent proceeding where that issue was actually or necessarily decided by a court of competent jurisdiction in an earlier proceeding involving the same parties in a different cause of action. [Citations.] Collateral estoppel may be invoked only when the issue decided in the prior adjudication is identical in both actions [citation], and the party against whom it is asserted had a full and fair opportunity to contest the issue which was determined in the prior proceeding." (*Powers*, 248 Ill. App. 3d at 141.)

This court found that although the trial court determined that plaintiff's employment was terminated because of "misconduct" within the meaning of the Act, it did not address whether plaintiff's conduct violated the terms of the severance agreement. This court reversed the decision of the trial court. *Powers*, 248 Ill. App. 3d at 141.

Defendant here argues that *Mitchell* and *Powers* are distinguishable from the present case, in that the issue before this court is identical to the issue before the DES: whether plaintiff left his job voluntarily. Defendant argues that the evidence at trial shows that plaintiff left his job voluntarily and was not terminated.

■ Defendant's argument is unavailing. Here, as in *Mitchell*, plaintiff's civil action for breach of contract does not involve the same issue as raised in plaintiff's claim for benefits under the Unemployment Insurance Act, *i.e.*, whether plaintiff left his employment voluntarily, but on the advice of a physician. The DES referee's finding that the plaintiff voluntarily left his employment, through no fault of his own, does not *ipso facto* preclude plaintiff's recovery under a separate contract dispute.

Moreover, the record reveals that plaintiff prevailed against defendant in his DES claim and was awarded benefits. Defendant has not convinced this court that we must extract from the ultimate disposition of plaintiff's DES claim the referee's finding that plaintiff left his employment "voluntarily" and use that statement against him in a separate contract proceeding.

The record reflects that plaintiff made a certain amount of sales during his employment, for which he was entitled by contract to a commission, and that defendant terminated him without proper notice and without paying him his commission pursuant to the employment contract.

We note that upon the order of this court, the parties filed briefs addressing the application to this appeal of section 1900, paragraph (B), of the Unemployment Insurance Act, effective August 13, 1991, entitled "Disclosure of information" (820 ILCS 405/1900(B) (West 1992)), which provides as follows:

> "No finding, determination, decision, ruling or order (including any finding of fact, statement or conclusion made therein) issued pursuant to this Act shall be admissible or used in evidence in any action other than one arising out of this Act, nor shall it be binding or conclusive except as provided in this Act, *nor shall it constitute res judicata,* regardless of whether the actions were between the same or related parties or involved the same facts." (Emphasis added.)

Neither party raised this issue on appeal or at the trial court level. Because we find that the trial court properly determined that the DES referee's decision did not bar plaintiff's contract action either through *res judicata* or collateral estoppel, we need not address whether section 1900 may be applied retroactively to this case.

■ Defendant further contends that the trial court improperly admitted plaintiff's testimony as to a telephone call he received from Erwin Kozin on August 29, 1990, wherein Kozin told plaintiff that he was terminated. Defendant argues that because Kozin was deceased at the time of trial, plaintiff's testimony was improper hearsay. The trial court overruled defendant's objection to the testimony at trial, stating that because Erwin Kozin was identified as defendant's president, the testimony was not hearsay as to defendant.

Defendant relies on *In re Estate of Holmgren* (1992), 237 Ill. App. 3d 839, 604 N.E.2d 1092. There, this court presided over a dispute involving the ownership of a boat. Witnesses at trial testified as to statements made by the decedent pertaining to the boat, *i.e.,* that the decedent told one witness that he made regular payments to his parents for the boat. (*Holmgren,* 237 Ill. App. 3d at 841-42.) This court found that some of the statements in question constituted the decedent's declaration of past events and therefore were not admissible under the hearsay rule. This court further found that the decedent's statements were not offered for the reasonable purposes of expressing the decedent's state of mind, intent or plan, but rather were offered as evidence to rebut the presumption of title in the

decedent's parents or to prove the truth of the matters contained therein. *Holmgren*, 237 Ill. App. 3d at 843.

In the present case, the statement of Erwin Kozin to the plaintiff falls within an exception to the hearsay rule, as it reveals Erwin Kozin's intent to terminate the plaintiff. The conversation is supported by Kozin's letter to plaintiff dated August 30, 1990, which was determined by the trial court to be genuine and accepted into evidence.

■ Finally, defendant contends that the trial court erred in denying its July 1, 1993, motion for leave to file *instanter* its verification of its response to plaintiff's first request for admissions of fact and genuineness of documents. Defendant argues that the trial court incorrectly concluded that it did not have the discretion to admit defendant's response.

Our supreme court has determined that a trial court has the discretion to allow an untimely response where the delinquent party has shown good cause for the delay in accordance with Supreme Court Rule 183. (*Bright v. Dicke* (1995), 166 Ill. 2d 204, 652 N.E.2d 275.) Rule 183 provides that the court,

> "for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." (134 Ill. 2d R. 183.)

In *Bright*, the court found that the defendant failed to show good cause as to why her response failed to meet the 28-day deadline; therefore, the trial court properly denied her permission to make a late response.

In the present case, the record shows that plaintiff filed his first request for admission of fact and of genuineness of documents on February 11, 1993. On April 19, 1993, defendant filed an unverified response. At no time did defendant offer any explanation as to why the 28-day deadline was not met. Under the circumstances of this case, the trial court properly denied defendant's motion to file its verified response on July 2, 1993.

For the above reasons, we therefore affirm the judgment of the trial court.

Affirmed.

WOLFSON and BRADEN, JJ., concur.