OBEY v McFADDEN CORPORATION

Docket No. 72340. Submitted April 18, 1984, at Lansing.—Decided
November 7, 1984. Leave to appeal applied for.

Joseph Obey was employed by the McFadden Corporation as a
salesman. His territory included the Caro School district and
he was involved in a number of sales to the school district
though its superintendent, James Sutherland. Over a ten-year
period, Sutherland on four occasions sold to the school district
equipment which he owned by having the purchase orders
drawn through a company once owned by Obey so that the
district would be unaware that the sale was really by Suther-
land. In 1978, an investigation into possible charges that Suth-
erland had conspired to defraud the school district was under-
taken. When, in May, 1978, three of the Obey transactions
came to light, McFadden Corporation suspended Obey. The
letter of suspension indicated that the suspension of employ-
ment would remain in effect until a finding clearing Obey of
any responsibility in· the Sutherland matter. Obey was granted
immunity from prosecution in return for testifying against
Sutherland. In March, 1979, McFadden Corporation terminated
Obey's employment. Obey brought an action in Oakland Circuit
Court against McFadden Corporation, alleging breach of con-
tract and wrongful discharge. At trial, the letter of suspension
and the defendant's employee policy manual were admitted
into evidence. Plaintiff's theory was that the statement in the
policy manual that an employee would only be discharged as a
last resort created an employment contract in which discharge
could only be for good cause and that defendant had breached
that duty. Plaintiff further argued that the letter of suspension,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 53 Am Jur 2d, Master and Servant §§ 45, 46, 48.3.
Modern status of rule that employer may discharge at-will em-
ployee for any reason. 12 ALR4th 544.

[2, 4, 5] 53 Am Jur 2d, Master and Servant § 49.
Right to discharge allegedly "at will" employee as affected by
employer's promulgation of employment policies as to discharge.
33 ALR4th 120.

[3, 4] 5 Am Jur 2d, Appeal and Error § 886.

[5] 53 Am Jur 2d, Master and Servant § 39.

when coupled with the corporate policy of discharging only as a last resort, gave rise to a contract for continued employment if he was cleared, that the granting of immunity amounted to a clearing of him of any criminal responsibility, and that his discharge amounted to a breach of that contract. Plaintiff still further argued that, even if the defendant could have discharged him forthwith upon defendant's learning of his acts, it was a breach of contract to discharge him after almost eleven months of suspension. Defendant moved for a directed verdict. The trial court, George H. LaPlata, J., reserved its ruling on the motion. The jury returned a verdict in favor of plaintiff. Defendant moved for a judgment notwithstanding the verdict or for a new trial, which were denied. Defendant appeals. *Held:*

1. The statement in the policy manual pledging that termination would be used only as last resort established an employment contract under which termination would only be for good cause. However, viewing plaintiff's proofs in the light most favorable to him, the evidence clearly established that his activities were in violation of the stated employment policies of the defendant such that termination of his employment was for good cause. The trial court, accordingly, erred in refusing to grant a directed verdict in favor of defendant on plaintiff's claim insofar as it was based upon the defendant's stated policy to terminate employment only as a last resort.

2. The employment policy statement, when coupled with the letter of suspension, gave rise to an implied contract that plaintiff would be reinstated if he were cleared of conduct which violated the terms of his employment. The fact that plaintiff was granted immunity from prosecution did not "clear" him of wrongdoing in his transactions with Sutherland. The ultimate termination of plaintiff's employment, therefore, did not constitute a breach of defendant's agreement to reinstate plaintiff if he were cleared of any responsibility in the matter involving Sutherland.

3. Even if it can be said that there was some contractual duty to terminate plaintiff's employment immediately upon learning of his involvement with Sutherland, it cannot be said that, under these circumstances, defendant's decision to suspend plaintiff during the pendency of the investigation so as to provide plaintiff with the opportunity to clear himself amounted to a breach of any contractual duty.

Reversed.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION OF EMPLOYMENT.

An employer's express agreement to terminate employment of its

employees only for good cause, or company policy statements to that effect, can give rise to an enforceable contract right to continued employment of the employee in the absence of a good cause reason for termination of employment.

2. Master and Servant — Employment Contracts — Termination of Employment — Good Cause.

A policy statement by an employer pledging that an employee will be discharged only as a last resort establishes an employment contract which allows for termination of employment only for good cause.

3. Appeal — Directed Verdicts — Evidence.

The Court of Appeals, in reviewing the propriety of a trial court's disposition of a motion for a directed verdict, views the evidence in the light most favorable to the nonmoving party; if there was sufficient evidence to create jury questions on the appropriate legal issues such that reasonable minds could differ on the meaning of the evidence, the motion for a directed verdict should be denied.

4. Master and Servant — Employment Contracts — Termination of Employment — Directed Verdicts.

A directed verdict is properly granted in favor of an employer on a claim by a discharged employee that he had a right to be free from discharge except for good cause where the employee's proofs establish that the employee engaged in illegal sales with a third party and that the policy manual of the employer prohibited outside work for pay.

5. Master and Servant — Employment Contracts — Termination of Employment — Good Cause — Criminal Responsibility.

A letter by an employer suspending an employee from employment until such time as he is cleared of any responsibility in certain criminal acts which would be in violation of the terms of employment, when coupled with the employer's stated policy not to terminate an employee's employment except for good cause, gives rise to a contractual obligation on the part of the employer to reinstate the employee if the employee is cleared of responsibility for those acts; being granted immunity from prosecution does not constitute being cleared of responsibility for the acts underlying the criminal charges.

*Sharon S. Friedman,* for plaintiff.

*McGinty, Brown, Jakubiak, Frankland & Hitch, P.C.* (by *Vittorio E. Porco),* for defendant.

Before: D. E. Holbrook, Jr., P.J., and Cynar and T. Gillespie,* JJ.

Per Curiam. Plaintiff filed a complaint against defendant alleging breach of employment contract. After a trial in Oakland County Circuit Court a jury returned a verdict in favor of plaintiff and awarded $35,000 in damages. Defendant brought a motion for judgment notwithstanding the verdict and for a new trial. The motions were denied. Defendant appeals to this Court as of right.

Plaintiff was employed by defendant as a salesman. Plaintiff's territory included the Caro School District, and he made a number of sales to the district through its Superintendent James Sutherland. Over a period of ten years, Sutherland approached plaintiff four times for personal favors. Sutherland said he had equipment he wanted to sell to the school district but he feared a direct sale. Purchase orders were drawn to Obey & Associates (a business plaintiff had once operated). Obey & Associates then invoiced the school district, checks were issued to Obey & Associates and cashed. The proceeds were given to Sutherland, who had presumably delivered the equipment to the school district.

In May, 1978, information came to light indicating a possible criminal conspiracy, involving Sutherland, to defraud the school district of thousands of dollars. Through the above scheme and other transactions Sutherland apparently bilked the school district out of between $60,000 and $100,000 over a ten-year period.

A general investigation of Sutherland revealed the Obey transactions. Defendant McFadden Corporation suspended plaintiff in May, 1978, pending an investigation and to give plaintiff a chance to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

clear himself. In the letter suspending plaintiff defendant stated:

"The Board of Directors reluctantly took action this afternoon to suspend you immediately. This suspension will remain in effect until such time as the matter involving the account of Caro Community Schools and James Sutherland finds you clear of any responsible acts either willingly or knowingly.

"This does not affect any commissions you have earned to this date."

Plaintiff was never indicted, but was granted immunity in return for testifying against Sutherland. In March, 1979, after being suspended for almost eleven months, plaintiff was discharged by defendant. Plaintiff brought suit against defendant alleging, in pertinent part, breach of the employment contract between the parties and breach of an implied agreement which was created by the suspension letter.

Howard Messenger, owner and president of McFadden Corporation, testified that the company's employee policy manual was the corporation's "pledge" to its personnel. The "pledge" included statements that (1) employees would be treated with consideration and respect, (2) discharge would be avoided except as a last resort, (3) the company would maintain an open door policy in regards to employee problems and suggestions, and (4) employees would be informed of developments in the business which may affect them.

Messenger further testified that on May 9, 1978, plaintiff met with Messenger, Jan Squires (an administrative assistant at McFadden) and Michigan State Police Sergeant Sunday. During the meeting Messenger learned of a December 1, 1977, transaction for $1,382 between Obey and Sutherland along the lines described above. A second

meeting later that day revealed two other transactions. Plaintiff told Messenger and Sunday that he did not make any money on the transactions but admitted that he had made an error in judgment.

The board of directors took action on the matter. Messenger reported the three transactions to the board and added that plaintiff had claimed to have made no money. Plaintiff was given the letter of suspension on May 9, 1978. No other terms of the suspension were discussed.

During the suspension period plaintiff's lawyer contacted defendant and defendant's lawyers were, in turn, in contact with plaintiff's lawyer. Direct contact between plaintiff and defendant was minimal. At the time the suspension began defendant was 60 years old and expected to retire at age 62.

In July, 1978, the board passed a resolution to discharge plaintiff. However, defendant's counsel advised the board that to discharge plaintiff at that time would be premature and any final decision to discharge plaintiff should await more complete facts from the office of the Michigan Attorney General. Plaintiff's attorney sent defendant a letter requesting a review of plaintiff's situation and an end of the suspension. The letter was forwarded to defendant's counsel for review and reply.

In October, 1978, a fourth transaction, which occurred in April, 1976, was disclosed to defendant through a transcript of a statement by plaintiff to the Attorney General.

Plaintiff testified that he expected his suspension would be short. Plaintiff said he understood that "cleared" meant "criminal clearance". He did not look for another job because he did not expect to be discharged.

Plaintiff was discharged by a letter dated March 27, 1979, which stated:

"The Board of Directors of McFadden Corporation, at their last Regular Meeting, having thoroughly reviewed your activities and involvement with James Sutherland, Superintendent, Caro Community Schools, has concluded your activities and conduct were contrary to the faithful and diligent performance of your responsibilities on behalf of McFadden Corporation, and therefore, feel that reinstatement cannot be justified with termination of employment becoming effective immediately."

Plaintiff received his pension benefits and outstanding commissions.

After the close of his proofs, plaintiff's counsel moved to amend the complaint to conform with the evidence under GCR 1963, 118.3, claiming a breach of the contract created by the suspension notice. The amendment was allowed over the objection of defense counsel.

Defendant moved for a directed verdict claiming that plaintiff had not shown an enforceable employment contract. The trial court reserved its ruling. Defendant recalled Messenger. He testified about the activities by defendant's board regarding plaintiff. He said that, at the time of the June 22, 1978, board meeting, defendant did not have the complete story regarding plaintiff. His situation was discussed at the July board meeting after receipt of the letter from plaintiff's attorney, and at a special meeting on August 2, 1978, at which the board discussed legal counsel's recommendation that plaintiff not be discharged at that time. Counsel had suggested that no disposition should be made until prosecution of Sutherland had been completed. At the regular August meeting the board was informed that there were no new developments in plaintiff's situation. At the September meeting the board was informed that the criminal action against Sutherland was continuing and that

plaintiff had not testified at the preliminary examination.

No board meeting was held in October, 1978. During that month defendant received information about the fourth transaction between plaintiff and Sutherland, which had occurred in April, 1976. At the November meeting additional documents pertaining to the criminal case against Sutherland were given to the board for it to review. The board decided to resolve plaintiff's status at the next board meeting.

At the December 15, 1978, meeting the board was informed that Sutherland was to be sentenced December 18, 1978. For this reason the matter was held in abeyance until January, 1979. At the January 18, 1979, meeting the board voted to discharge plaintiff.

A proposed termination letter was offered to the board. The initial draft did not meet with the board's approval. A subsequent draft by defendant's counsel was approved and mailed to plaintiff in March, 1979.

Sergeant Sunday testified that plaintiff was never told that he was cleared of any criminal activity. Rebecca McClear, a former assistant attorney general, said plaintiff was not cleared of criminal charges but was given immunity from prosecution.

Defendant renewed its motion for a directed verdict at the close of proofs. The court reserved its ruling. Defendant insisted on a theory instruction and the parties agreed on a general verdict. The jury returned a verdict for plaintiff.

As a preliminary observation, we note that much of the confusion in this case can be attributed to the ambiguities in plaintiff's theories. The plaintiff's theories were subject to frequent change as the trial progressed towards closing argument.

In opening statement plaintiff's counsel stated to the jury that the plaintiff would show wrongful discharge and breach of contract. The jury was told that it would be shown that defendant breached the contract created by its written agreement with plaintiff which was supplemented by defendant's policy manual. Furthermore, plaintiff's counsel stated that defendant breached the obligation to plaintiff that was created by the suspension letter. Plaintiff's counsel stated:

"We're alleging three basic wrongs that were done by the defendant corporation to the plaintiff. The first is a wrongful discharge. The second is a breach of contract and the third is an interference with advantageous economic relationships."

Plaintiff's counsel continued:

"Now, the evidence is going to show that the parties had initially entered into a written contract way back when Mr. Obey started employment, that this contract was modified over the years by certain policy statements as they were called that were sent out by the McFadden Corporation. The McFadden Corporation will not deny that this contract and this policy applied to them as well as to Mr. Obey but I believe the evidence is going to show that they have breached these obligations imposed upon them when they suspended Mr. Obey. They told Mr. Obey and the evidence is going to show this, they said if you're cleared of criminal wrongdoing, you'll get your job back. There is no doubt that Mr. Obey was never charged with a thing in this case."

Plaintiff's counsel told the jury that the issue was whether the contract created by the policy manual and the suspension letter was breached by defendant.

At the close of proofs the court instructed the jury on contracts as follows:

"Now, the plaintiff has the burden of proof on each of the following points. First, he must prove by a preponderance of the evidence that he was employed under a contract which required good cause for a termination. Second, he must show that his employer, the defendant McFadden, breached a contract by terminating him without good cause. And finally, if the plaintiff has shown both of the above, he must establish his damages. Your verdict will be for the plaintiff if you find that he has proven each of the above points by a preponderance of the evidence. Your verdict will be for the defendant McFadden if you find that the plaintiff has failed to prove each of the above points by a preponderance of the evidence.

"Now, if you find that the plaintiff has proven by a preponderance of the evidence that he had an employment contract under which he could be terminated only for good cause and if you find that McFadden did not have good reason to discharge the plaintiff, then you may award damages to the plaintiff."

The jury later requested clarification of the instructions. The court proposed the following instructions:

"The one that says the plaintiff has the burden of proof on each of the following, first, he must prove by a preponderance of the evidence that he was employed under a contract which required good cause for termination. Second, he must show that his employer McFadden breached a contract by terminating him without good cause. And finally, if the plaintiff has shown both of the above, he must establish his damages. Your verdict will be for the plaintiff if you find he has proven each of the above points by a preponderance of the evidence. Your verdict will be for McFadden if you find that he has failed to prove each of the above points."

Plaintiff's counsel objected:

"*Mr. Stein:* That's not my claim.
"*The Court:* Pardon?

"*Mr. Stein:* That doesn't include one of my claims.

"*The Court:* Which one was that?

"*Mr. Stein:* It doesn't include the claim that—let's they had good cause to terminate him on May 9th. I argued that there was a contract created as of May 9th so even if they had good cause to terminate him, they certainly could not have left him there for five years under suspended status even if they had a good faith effort to terminate him. What I have argued is that they kept him on the string and dribbled out his commission."

Plaintiff's alternative theories confused the jury. A note from the jury to the court asked:

"Is 'Defendant's Jury Instructions' the same content as the plaintiff's complaint? Is plaintiff claiming 'breach of contract' because of the way they went about terminating him or 'breach of contract' because of termination without cause. I think we need the complaint as stated by the plaintiff."

In reply the court told the jury:

"Ladies and gentlemen, I have received this note and I think what I would like to say to you at this time, ladies and gentlemen, is that first, the court is of the belief that this is really not a very complicated case. It's really a relatively simple case. There's two counts in this case. The plaintiff has sued for breach of contract and the plaintiff has sued for wrongful discharge. We have given to you the plaintiff's claim, theory of the case and also the defendant's theory of the case and I've also given you the instruction which shows about the burden of proof and we've also given you the one about the breach of contract. I think that you ought to try to in your own mind simplify matters. I think you're probably reading too much into the case. It's just not a very complicated case and I think that you can resolve it if you just start simplifying the issues and answer questions, you know, was there a breach of contract, was it a wrongful discharge. If it was, you find damage.

If it wasn't, you know and I think that's all you have to do, very frankly. But I'll ask you to again go back into the jury room and we'll give you back these theories of the parties and also the other paper that you had and then hope that you can reach a verdict and if you can't, then we'll do something else but right now, let's hope that takes care of it.

The jury returned a verdict for the plaintiff. Defendant moved for judgment notwithstanding the verdict. The motion was denied.

From the facts and argument we have distilled two issues. First, did the trial court err in refusing to grant a directed verdict at the close of plaintiff's proofs because plaintiff had not established that a contract existed between the parties? Second, do the facts taken in the light most favorable to the plaintiff establish a breach of the second agreement created by the policy manual and suspension letter?

Addressing the first issue, we note that an employer's express agreement to discharge only for good cause or company policy statements to that effect can give rise to enforceable contract rights. *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579, 614; 292 NW2d 880 (1980); *Dudkin v Civil Service Comm,* 127 Mich App 397; 339 NW2d 190 (1983); *Damrow v Thumb Cooperative Terminal, Inc,* 126 Mich App 354; 337 NW2d 338 (1983), *lv den* 418 Mich 899 (1984). In this case we will assume that the statement in the policy manual pledging that discharge would be used only as a last resort established a "good cause" employment contract.

Having found an enforceable contract, the next question is whether there was good cause for defendant to discharge plaintiff. Defendant moved for a directed verdict on this issue. In reviewing a trial court's disposition of a motion for a directed

verdict this Court views the facts in the light most favorable to the nonmoving party. *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265 (1976), *lv den* 397 Mich 808 (1976). If reasonable minds could differ on the meaning of evidence, then the motion for the directed verdict was properly denied. *Bosca v J A Ferguson Construction Co,* 79 Mich App 177; 261 NW2d 249 (1977). There must be sufficient evidence to create jury questions on the appropriate legal issues. *Smith v Allendale Mutual Ins Co,* 79 Mich App 351; 261 NW2d 561 (1977), *aff'd* 410 Mich 685; 303 NW2d 702 (1981). Having shown a good cause contract, the question was whether sufficient reasons had been shown to justify termination. In opening statement plaintiff's counsel conceded that suspension of the plaintiff was proper. Plaintiff himself testified about the illegal transactions with Sutherland. The policy manual admitted as plaintiff's exhibit prohibits outside work for pay. Plaintiff's activities fall within the scope of such proscribed activities. These facts show there was sufficient evidence to support a directed verdict for defendant. The trial court erred in refusing to direct a verdict finding that there was good cause for plaintiff's discharge.

However, because the trial court allowed plaintiff to proceed on his claim that defendant violated its agreement by the manner in which plaintiff was discharged, we now turn to the second issue.

Defendant moved for judgment notwithstanding the verdict, claiming that plaintiff had not shown that defendant breached a contractual duty to discharge plaintiff in a timely manner. The trial court denied the motion. Defendant claims that the trial court erred. We agree.

We note that the facts taken in the light most favorable to the plaintiff could establish that the May 9, 1978, suspension letter and the policy

manual created a contract between the parties. However, the facts do not establish that the contract was breached. Plaintiff's theory is that a breach occurred because defendant waited 11 months between suspension and ultimate discharge of plaintiff. But the substance of the contract was that plaintiff would be reinstated only if he were cleared of conduct in violation of the terms of his employment.

As noted above, plaintiff conceded that the suspension was proper. Furthermore, Sergeant Sunday testified that plaintiff was never cleared of criminal charges. Rebecca McClear also testified that plaintiff was given immunity in return for his cooperation. Plaintiff testified in rebuttal only that he was not aware that he was granted immunity. Giving plaintiff every reasonable inference which can be drawn from this evidence, it is clear that plaintiff did not "clear" himself of wrongdoing in his transactions with Sutherland. Therefore, the contract provision that plaintiff would be reinstated when cleared was not breached.

Plaintiff also stated an alternative theory in his opening and closing statements to the jury, suggesting that defendant breached its contract by failing to discharge plaintiff forthwith. Assuming this novel assertion could be considered a provision of the contract, we do not agree that the facts show a breach of that peculiar contractual duty.

The facts show that plaintiff was suspended in May, 1978, and discharged toward the end of March, 1979. The facts show that plaintiff's situation was addressed at every board meeting during that period. The record indicates that defendant was exceedingly cautious in handling plaintiff's situation. Plaintiff has not shown that defendant treated him unfairly or violated his contract by according his case this extensive consideration.

Clearly there was no breach. The board conscientiously informed itself about the case at every meeting. Indeed, a special meeting was held in August, 1978, solely for consideration of plaintiff's case. If defendant had swiftly discharged plaintiff it would have violated its promise to discharge only as a last resort. The extensive consideration given to plaintiff's case was consistent with defendant's pledge to treat employees with consideration and respect. We conclude that, as a matter of law, viewing the facts in the light most favorable to the plaintiff, there was no breach of the alleged contract created by the employment policy manual and the May 9, 1978, letter of suspension. Judgment notwithstanding the verdict should have been granted to the defendant.

Because our ruling disposes of this matter we do not address defendant's other issues raised on appeal.

Reversed.