(No. 69539.—

JAMES MITCHELL, Appellant, v. JEWEL FOOD STORES, Division of Jewel Food Companies, Inc., Appellee.

*Opinion filed December 20, 1990.—Rehearing denied April 1, 1991.*

154

MILLER, J., joined by MORAN, C.J., dissenting.

Lonny Ben Ogus, of Chicago, for appellant.

Marcia E. Goodman, of Kovar, Nelson, Brittain, Sledz & Morris, of Chicago, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Plaintiff, James Mitchell, was employed by defendant, Jewel Food Stores, as a security guard from November 1976 until August 1983 in defendant's southeast Chicago stores. Plaintiff worked one of three different shifts, at one of three different stores. Plaintiff was required to keep track of all hours worked, and the location of each store at which he worked, on a timecard which he would turn in at the end of each workweek. Defendant terminated plaintiff's employment because plaintiff submitted an incorrect timecard.

Plaintiff brought a breach of contract action against defendant in the circuit court of Cook County. Both plaintiff and defendant moved for summary judgment. After a hearing on both motions, the circuit court denied plaintiff's motion for summary judgment and allowed defendant's motion for summary judgment. Plaintiff appealed, and the appellate court, with one justice dissenting, affirmed. (189 Ill. App. 3d 450.) This court allowed plaintiff's petition for leave to appeal on January 31, 1990 (107 Ill. 2d R. 315).

The workweek for security officers at defendant's stores was from Sunday to Saturday. Defendant provided its security officers with timecards on which to record the number of hours worked. Security officers were required to submit their timecards at the end of each workweek. Sign-in log sheets were located at each store. Security officers were required to write the time

they began work and the time they finished work in the sign-in log sheet.

Plaintiff received his work schedule, which was subject to change, on the Friday or Saturday preceding the workweek. Plaintiff then wrote down his schedule on the timecard. On August 2, plaintiff was scheduled to work from 7 a.m. until 3 p.m. Plaintiff submitted a timecard which reflected that he began work on August 2 at 7 a.m., when he actually started work at 7:25 or 7:30 a.m. The sign-in log sheet reflected plaintiff started work on August 2 at 7 a.m., instead of 7:25 or 7:30 a.m. Plaintiff was suspended pending an investigation on August 8. Sometime later, defendant discharged plaintiff for "falsifying time records."

During his employment, defendant distributed to its security officers an employment manual entitled "Benefits and Policies for Security Officers." Part of the manual was entitled "Major Security Operating Policies." The Major Security Operating Policies section contained sections "A" through "J." Immediately preceding section A, the manual stated that "[v]iolation of any of the following policies will lead to disciplinary action, up to and including dismissal." Section E, entitled "Time Cards and Sign-In Log Book," provided: "All time cards and sign-in log books must reflect correct dates and times worked."

Section J, entitled "Discipline," provided:

"During an employee's probationary period, that is, during his first ninety (90) days of employment, an employee may be discharged for any reason at the sole discretion of the employer. After an employee has completed the probationary period, such employee shall not be suspended, discharged or otherwise disciplined without just cause, just cause to include but not be limited to the following: continuing poor performance on the job, whether due to inefficiency, loafing, carelessness or incompetency; dishonesty or other misconduct in connection with work;

incivility; insubordination, and serious or persistant [sic] infraction of reasonable rules promulgated by management relating to the operation of the store or the health or safety of employees."

It was plaintiff's contention, based on *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, that the employment manual created an enforceable contractual right that plaintiff could only be discharged for just cause. In *Duldulao*, this court held that when traditional requirements for contract formation are present, "an employee handbook or other policy statement creates enforceable contractual rights." (*Duldulao*, 115 Ill. 2d at 490.) Defendant argued that the handbook did not constitute a contract. Defendant also argued that if the manual were found to constitute a contract, then the termination of plaintiff's employment complied with the terms of the contract.

At the time plaintiff's employment was terminated, defendant paid plaintiff an hourly wage of $8.95. Had the defendant not discovered the incorrect timecard, plaintiff would have been paid approximately $4.48 for time not actually worked. At the hearing, defendant argued that in submitting inaccurate time information, plaintiff had "committed dishonesty, misconduct in connection with work, and a serious infraction of reasonable rules under the terms of the document."

Defendant did not provide its security officers with anything on which to record work schedules other than timecards. Defendant acknowledged that plaintiff filled out his timecard in advance of each workweek to enable plaintiff to remember his schedule. It was defendant's position that plaintiff had the responsibility to ensure all time records were correct. According to defendant, it had total discretion to determine what, if any, discipline was appropriate for the submission of inaccurate time records. Defendant argued at the hearing that unless

plaintiff had been led to reasonably believe otherwise, the definition of "other misconduct" within the meaning of the manual "means what we have always taken it to mean, what we have always enforced it to mean, what we say it means." According to defendant, there is not a single piece of competent evidence which could create an issue of fact as to whether or not just cause for termination existed.

On the Friday or Saturday prior to each workweek, plaintiff received his work assignments from various security officer supervisors or various security employees. At times, security guards might have to call each store they worked at to be informed of their schedule. Plaintiff worked at several of defendant's stores each week, and his shifts varied from day to day. The work assignments were given to plaintiff verbally and were subject to change. Plaintiff was required to keep track of the number of hours he worked, and the location of the various stores at which he worked, on his timecard. Plaintiff would turn in his timecard at the end of each week, and plaintiff would be paid for the hours reflected on the timecard. Plaintiff would fill out his timecard in advance as a reminder of where and when he was to work.

On August 1, 1983, plaintiff worked from 2 p.m. to 10 p.m. On August 2, 1983, plaintiff was to work from 7 a.m. to 3 p.m. Plaintiff arrived home after working the late shift on August 1, and took medication for his heart (Parafon Forte tablets and Feldene capsules). According to plaintiff, the combination of working late and taking medication caused him to oversleep on August 2. Plaintiff missed his 6 a.m. bus, caught the next one, and arrived at work at 7:25 or 7:30 a.m. According to plaintiff, he talked to Bob Davis, defendant's store manager, upon his late arrival. Plaintiff told Mr. Davis why he was late.

At the hearing, plaintiff argued he did not falsify his timecard; rather, he mistakenly failed to correct the time

which he had written on the card the previous week when he received his schedule. Plaintiff's explanation for having written 7 a.m. on the sign-in log sheet, instead of 7:25 or 7:30 a.m., appears to be that he did not sign the sign-in log sheet upon his arrival at the store, but sometime later that day. When plaintiff did sign the sign-in log sheet, he referred to his timecard and mistakenly entered 7 a.m., the time which appeared on his timecard, instead of 7:25 or 7:30 a.m.

At the hearing, the circuit court noted that "absent an enforceable contract, [the employer] has a right to fire an employee for good reason, [or] no reason at all." Further, "if the employer has not given up the right to exercise [its] discretion as to what the penalty will be for a given transaction, then if that transaction occurs *** the *** employer is in no different position than [it] was in had there been no contract at all."

The circuit court found, as a matter of law, that the language of the manual was unambiguous. According to the circuit court, defendant reserved to itself the right under the manual to exercise its discretion in determining the appropriate penalty for the submission of an inaccurate timecard and an inaccurate notation on a sign-in log sheet. The penalty could range from no discipline to termination of employment. The circuit court found that the exercise of defendant's discretion need not be measured against an objective standard, or any standard, because defendant did not set forth a standard by which its actions would be measured in the manual. According to the circuit court, defendant "had virtually, by the way this contract has been written, retained [its] unbridled discretion as to what penalty will be handed out if there is a violation." The circuit court stated:

> "[The contract] says such employee shall not be suspended, discharged, or otherwise disciplined without just cause. Just cause to include but not be limited to the fol-

lowing. And then they list all of the things. Not too difficult for me to find as a matter of law that the improper noting of time on the time record, the sign-in sheet, and then submitting that timecard to the employer for payment is a serious infraction of reasonable rules promulgated by management relating to the operations of the store.

The contract specifically says that these sign-in sheets are an operating instruction under the contract. You have got to put the right time in. Now, if that's the case and no punishment is promulgated for that transgression and this paragraph merely says that unless you do this, you will not be disciplined, suspended, or fired, then in that particular case, management has absolute, unbridled discretion as to which of the punishments it will promulgate for any one of those transgressions unless otherwise limited by another part of the contract."

Plaintiff argued at the hearing that his admitted mistake which resulted in an inaccurate time being reflected on the timecard and sign-in log sheet was not "dishonesty or other misconduct in connection with work" within the meaning of section J of the employment handbook. Since dishonesty or other misconduct is required to constitute just cause, and since just cause is required before defendant can terminate an employee who had successfully completed the initial 90-day probationary period, plaintiff argued, defendant breached the contract when it terminated plaintiff's employment without just cause.

Ray Mertens, defendant's south area security manager, terminated plaintiff's employment. Plaintiff relies on the deposition testimony of Mertens to support his argument that an admitted mistake, as opposed to deliberate falsification of company documents, is not misconduct within the meaning of the manual thereby giving rise to just cause to terminate plaintiff's employment. Mertens stated in his deposition, "If a security officer

falsifies his time card, he would be terminated." Mertens defined falsification of a timecard as "[r]ecording incorrect time on your time card without any type of mitigating circumstances." According to Mertens, "if you reflect an incorrect time card intentionally, that would be falsification."

The circuit court found as a matter of law that there was no question of fact as to whether plaintiff's unintentional submission of an incorrect timecard was an act for which defendant could terminate plaintiff's employment: "[The manual] only requires a serious violation of [defendant's] policy. [The manual] doesn't say it has to be intentional ***. [Plaintiff] admits to turning in a time card that's inaccurate ***. [Defendant's] policy says you cannot turn in a time card that's not accurate. And [plaintiff] admits to turning in a time card that's inaccurate. [The manual] says you cannot sign a sign-in sheet where the time is inaccurate. [Plaintiff] admits to having done that."

Both the majority and the dissent in the appellate court agreed that defendant's manual was sufficient to create a binding contract between defendant and plaintiff pursuant to *Duldulao*. In *Duldulao*, this court set out the requirements which must be met in order for an employee manual or other policy statement to create enforceable contractual rights:

"First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained

in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490.

Defendant sent its employment manual to its security officers sometime around November 1980. Defendant's employment manual contained the clear promise that, after an employee successfully completed a 90-day probationary period during which time the employee "may be discharged for any reason at the sole discretion of the employer," an employee "shall not be suspended, discharged or otherwise disciplined without just cause, just cause to include but not be limited to the following: *** dishonesty or other misconduct in connection with work; *** and serious or persistant [*sic*] infraction of reasonable rules promulgated by management relating to the operation of the store or the health or safety of employees." Plaintiff received the employment manual, read through it, and continued to work. We agree with the appellate court when it stated that "plaintiff brought sufficient evidence to show that the requirements of *Duldulao* were met, and that his employment could not be terminated at will insofar as the manual provided otherwise." 189 Ill. App. 3d at 454.

The appellate court agreed with the circuit court that the language of the contract was "clear and unambiguous *** regarding discharge for submission of incorrect time cards." (189 Ill. App. 3d at 460.) Plaintiff admitted he had submitted an incorrect timecard and recorded an incorrect time on the sign-in log sheet. The appellate court concluded the circuit court was correct when it "found that the employment manual allowed defendant, the employer, discretion to determine the penalty for plaintiff's filing a false time card, and that such penalty could include termination." (189 Ill. App. 3d at 460.) Since the appellate court found no question of fact concerning whether defendant acted within its rights under

the contract, it affirmed summary judgment for defendant.

Justice Rizzi, in dissent, disagreed that summary judgment should lie for defendant. The dissent concluded that, under the specific language of the contract, plaintiff could only be fired for just cause. Just cause, according to the contract, included dishonesty or other misconduct in connection with work. The dissent concluded the record did not, as a matter of law, establish dishonesty on the part of plaintiff. According to the dissent, the issue then became "whether plaintiff's pertinent conduct constituted 'other misconduct in connection with work' as a matter of law within the context of the relevant provision of the manual." 189 Ill. App. 3d at 461 (Rizzi, J., dissenting).

As the dissent noted, the manual fails to define misconduct. The dissent found that "dishonesty or other misconduct" should "be considered and construed with reference to each other so that they may be given an intended harmonious effect." (189 Ill. App. 3d at 461 (Rizzi, J., dissenting).) The dissent concluded "that other misconduct, like dishonesty, as used in the manual means consciously and knowingly doing something wrong in connection with work as opposed to doing something mistakenly or inadvertently." (189 Ill. App. 3d at 461 (Rizzi, J., dissenting).) The dissent found that the term "other misconduct" in the manual was ambiguous. Since ambiguous contractual language is generally construed against the drafter of the contract (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 116), the dissent determined that, absent evidence to the contrary, the term "other misconduct" must be construed against defendant.

The appellate court did not deem the testimony of defendant's supervisor of security personnel, Ray Mertens, "sufficient to show" that an intention to reflect in-

correct time is necessary to constitute falsification as "was intended by the language of the manual." (189 Ill. App. 3d at 455.) According to the dissent, "[t]he majority misdeems the import of [Mertens'] testimony because it construes the undefined term 'other misconduct' in the manual against the plaintiff rather than against the drafter of the manual, [defendant]." (189 Ill. App. 3d at 462 (Rizzi, J., dissenting).) The dissent found that Mr. Mertens' testimony, "that intent to commit an act is required in order for conduct of an employee to constitute 'misconduct' " (189 Ill. App. 3d at 462 (Rizzi, J., dissenting)), supported plaintiff's interpretation of the term "other misconduct" as used in the manual. The dissent found that "it is simply not true that there is clear and unambiguous language in the employment manual regarding discharge for submission of incorrect time cards based on an admitted honest mistake. *** [T]he pertinent provision of the manual provides that plaintiff could only be discharged for cause, which would include dishonesty or other misconduct in connection with work. Merely making a mistake is not misconduct." 189 Ill. App. 3d at 462 (Rizzi, J., dissenting).

The dissent concluded:

"[T]he majority states that it agrees with the trial court that Jewel had the discretion to discharge plaintiff for filing a false time card. The fact is that the record does not establish that plaintiff filed a false time card within the meaning of dishonesty or other misconduct as used in the manual. Rather, the record establishes that plaintiff merely filed a time card with an honest mistake in it. If the majority is correct, virtually every mistake that is made in connection with one's employment would amount to dishonesty or other misconduct, and it would give the employer the absolute discretion to discharge the employee regardless of the employee's length of service." (189 Ill. App. 3d at 462-63 (Rizzi, J., dissenting).)

The dissent would have reversed summary judgment for defendant, and allowed summary judgment for plaintiff.

We agree with the dissent that the contractual language at issue, "other misconduct," is ambiguous and must therefore be construed against, and not in favor of, defendant. Whether or not plaintiff's conduct constituted misconduct giving rise to just cause for discharge within the meaning of the manual is a disputed factual issue. The purpose of a summary judgment procedure is to permit the circuit court to determine whether any genuine issue of material fact exists; it is not to allow the circuit court to decide factual issues. (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 538.) The party opposing the motion has the right to a jury trial if there is a genuine issue of fact, and for that reason, "the court will construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398.) "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

It is defendant's contention that it specifically reserved to itself in its manual the discretion to determine the type of discipline it would impose for a violation of any of its major security operating policies by one of its nonprobationary employees. Defendant argues that any violation of section E of the contract, which stated that "[a]ll time cards and sign-in log books must reflect correct dates and times worked," constitutes misconduct giving rise to just cause to terminate a nonprobationary employee's employment. Concerning the deposition testimony of Mertens that an incorrect time must be inten-

tionally reflected in order for falsification to have occurred, defendant informed this court in oral argument that this testimony only reflected what Mertens personally thought, not defendant's actual policy.

Mertens was directly responsible for all the security officers assigned to defendant's south area stores. Mertens was responsible for implementing defendant's policies in regard to all security officers in defendant's south area stores. Mertens had the authority to discharge defendant's workers without obtaining permission from anyone else. Nowhere in the record does defendant deny it placed this authority in Mertens. Defendant offered no evidence to rebut Mertens' testimony that in order for there to be falsification of time documents there must be an intentional reflection of an incorrect time. We agree with plaintiff that the unrebutted testimony of defendant's employee responsible for carrying out defendant's policy may not be dismissed as mere personal opinion.

Plaintiff argues that the only way to fairly give effect to every provision in the manual is for "other misconduct" to be defined in a manner other than that which would swallow up every other page, paragraph, sentence and word. Because one party to a contract does not have the unilateral right to define ambiguous terms, plaintiff argues that defendant may not, as it argued at the hearing, define misconduct to mean "what [defendant] says it means."

We agree with plaintiff that defendant may not unilaterally define an ambiguous term in a contract to mean whatever defendant says it means.. Defendant issued an employee manual which "create[d] enforceable contractual rights." (*Duldulao*, 115 Ill. 2d at 490.) Defendant required its employees to submit correct timecards. The manual promised all security officers who successfully completed probation that they would not be fired without just cause. The manual stated that just cause in-

cluded "dishonesty or other misconduct in connection with work." The manual did not define "other misconduct." We have determined that the term "other misconduct" is an ambiguous term which is to be construed against the drafter.

Defendant does not choose to make a distinction between the intentional submission of incorrect time documents and the unintentional submission of incorrect time documents. Either would be characterized as falsification of time documents by defendant. According to Mertens, however, an intentional act is required in order for there to be a falsification of time documents, and an admitted mistake resulting in the submission of incorrect time documents is not conduct resulting from an intentional act.

Defendant did not present evidence which, when examined in the light most favorable to plaintiff, showed that plaintiff intentionally reflected an inaccurate time on company documents. Defendant argues plaintiff admitted violating the rule which requires correct times on time documents. Plaintiff did admit that the timecard and sign-in log sheet reflected inaccurate times. Plaintiff did not, however, admit he intentionally reflected incorrect times on the timecard and sign-in log sheet. Plaintiff admitted only that he made a mistake.

Defendant fears that if summary judgment is not affirmed, this court will be allowing a jury to "substitute [its] judgment for the employer's where specific rules are set forth in the handbook and the reasons for discharge are defined." According to defendant, if summary judgment in its favor is not affirmed, an employer would not be able "to choose freely from a range of penalties, even if the employer had reserved such discretion to itself."

Defendant cites *Obey v. McFadden Corp.* (1984), 138 Mich. App. 767, 360 N.W.2d 292, for support of its argument that an employer's decision to terminate an em-

ployee may not be challenged by the employee where a specific rule set out by the employer is violated. In *Obey*, the discharged employee admitted having committed the actions prohibited by the employer's policy manual which was found by the court to create a contract for "good cause" discharge. The employee in *Obey* had engaged in outside work for pay with a person who was subsequently charged with criminally defrauding a school district of between $60,000 and $100,000 over a 10-year period.

In *Obey*, the employee admitted violating a rule and agreed suspension was proper. The facts in *Obey* were such that reasonable minds would agree that the employee's actions constituted "good cause" for discharge. In the case at bar, plaintiff does not admit he falsified the timecard and sign-in log sheet; rather, plaintiff admits he made a mistake. Plaintiff does not admit his suspension or termination was proper. Under the facts presented, reasonable minds could differ as to whether plaintiff's actions were misconduct constituting just cause for termination.

Both plaintiff and defendant discuss the case of *Renny v. Port Huron Hospital* (1986), 427 Mich. 415, 398 N.W.2d 327. The court in *Renny* stated:

> "Where an employer has agreed to discharge an employee for just cause only, its decision to terminate the employee is subject to judicial review. The jury decides as a matter of fact whether the employee was discharged for cause. While the jury may not substitute its opinion for that of the employer's, it may determine whether the employee committed the specific misconduct for which he was fired, whether the firing was pretextual, whether the reason for discharge amounted to good cause, or whether the employer was selectively applying the rules." (*Renny*, 427 Mich. at 429, 398 N.W.2d at 335.)

Defendant argues that summary judgment in its favor is proper because a jury may not substitute its judgment for the employer's when an employee has admitted to misconduct which gives rise to just cause within the definition of the employment statement found to have created enforceable contractual rights. The record does not reveal, however, that plaintiff admitted his actions constituted misconduct within the meaning of the manual.

Nothing in this opinion allows a jury to substitute its judgment for that of an employer in an area where the employer has reserved to itself discretion to determine the appropriate discipline for a violation of one of its rules. In the case at bar, defendant reserved to itself the discretion to determine the appropriate discipline for "other misconduct in connection with work." Defendant did not reserve the discretion to define a mistake as misconduct which constitutes just cause for termination.

Whether plaintiff's actions constitute misconduct which gives rise to just cause for defendant to terminate plaintiff's employment is a disputed fact. Disputed facts are not to be decided by the circuit court in a summary judgment action. (*Kobus*, 35 Ill. 2d at 538.) For this reason, it was error for the circuit court to allow defendant's motion for summary judgment. For the same reason, the circuit court correctly denied plaintiff's motion for summary judgment.

It is for a jury to determine whether plaintiff's conduct constituted misconduct or a mistake. If a jury determines that plaintiff's actions constituted misconduct, the defendant would have had just cause to terminate plaintiff's employment, and defendant's exercise of its discretion to choose to discharge plaintiff for the 25- to 30-minute discrepancy would be safe from the jury's consideration. If a jury determines that plaintiff's actions constituted a mistake and not misconduct, then defend-

ant would not have had, according to the manual, just cause to terminate plaintiff's employment. Without just cause to terminate plaintiff's employment, defendant had no discretion to exercise. At the hearing, the circuit court correctly noted that *Duldulao* does not place a jury in the position of "running a private industry." In this case, the jury will not be called upon to run a private industry; the jury will be called upon to exercise its traditional role of deciding a disputed issue of material fact.

Plaintiff correctly points out defendant did not have to issue a manual which could create enforceable contractual rights. Defendant agrees that it did not have to issue a manual, but states that if it did not issue a manual, it would "deprive its employees of any guidance as to what is expected of them."

Defendant's desire to give guidance to its employees is laudable. Defendant may fulfill its goal of giving guidance to its employees by issuing a manual and, at the same time, reserve to itself the discretion to fire any employee at any time for any reason which is not illegal. Defendant points out that in *Duldulao*, this court found persuasive the case of *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622. In *Pine River*, the court noted that "[l]anguage in the handbook itself may reserve discretion to the employer in certain matters or reserve the right to amend or modify the handbook provisions." *Pine River*, 333 N.W.2d at 627.

Defendant's own manual demonstrates that defendant knows how to specifically reserve to itself the discretion it feels it needs. Defendant clearly and unambiguously informed all of its employees that during the employees' first 90 days of probationary employment, the employee "may be discharged for any reason at the sole discretion of the employer." If defendant wants to reserve sole discretion to discharge any employee for any reason at any

time, defendant could simply say so. Defendant would not then need to make a distinction between probationary employees, who may be fired for any reason, and nonprobationary employees, who could be fired only for "just cause." All defendant would have to do would be to state that any mistake by any employee could result in loss of employment.

Defendant correctly observes, as did the court in *Pine River*, that " 'the employer's prerogative to make independent, good faith judgments about employees is important in our free enterprise system.' " (*Pine River*, 333 N.W.2d at 630, quoting Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum. L. Rev. 1404, 1428 (1967).) It is still "the general rule, that an employment relationship without a fixed duration is terminable at will by either party." (*Duldulao*, 115 Ill. 2d at 489.) "Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause." (*Toussaint v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 610, 292 N.W.2d 880, 890.) An employer's decision to issue an employment manual to its work force which meets the requirements set out in *Duldulao* is not, however, without consequences: it may create enforceable contractual rights.

As stated by the court in *Toussaint*:

> "If there is in effect a policy to dismiss for cause only, the employer may not depart from that policy at whim simply because he was under no obligation to institute the policy in the first place. Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory." *Toussaint*, 408 Mich. at 619, 292 N.W.2d at 895.

After plaintiff was discharged, he sought unemployment compensation. The decision by the referee of the Department of Labor, that plaintiff's "misconduct" rendered him ineligible for benefits, was affirmed by the Board of Review. Plaintiff then filed a complaint for administrative review of the denial of unemployment benefits in the circuit court of Cook County. The circuit court reversed the decision of the administrative body because it found plaintiff's conduct did not rise to the level of misconduct sufficient to preclude plaintiff from receiving unemployment benefits. Defendant appeared at each stage of the above-mentioned proceedings, and did not appeal from the circuit court's decision.

Plaintiff argues that the decision by the circuit court regarding his unemployment claim is *res judicata* and estops defendant from asserting, in the case at bar, that plaintiff's conduct constituted just cause for defendant to terminate plaintiff's employment. We agree with the appellate court that defendant was not estopped from so arguing. As the appellate court stated, the circuit court which heard plaintiff's unemployment compensation appeal "was not required to, and did not, address the issue of whether 'misconduct' under the [Unemployment Insurance] Act had the same meaning as 'misconduct' sufficient to justify termination. *** [W]hether plaintiff committed 'misconduct' under the Act is not the same question as plaintiff raised in the instant suit, namely, whether his termination was based on 'just cause,' which may include 'dishonesty or other misconduct' as set forth in [defendant's] manual." 189 Ill. App. 3d at 457.

After plaintiff's petition for leave to appeal was allowed, defendant filed a motion to strike plaintiff's argument that summary judgment for plaintiff should be allowed. This court agreed to consider this motion with the case. Defendant argues in its motion that plaintiff

failed to challenge the appellate court's affirmance of the circuit court's denial of plaintiff's motion for summary judgment. We have reviewed the record and find plaintiff did not waive his argument that the circuit court's denial of summary judgment for plaintiff was error. Accordingly, defendant's motion is denied.

For the foregoing reasons, we reverse the judgments of the appellate and circuit courts. This cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE MILLER, dissenting:

In the present case, the employee handbook issued to the plaintiff provided that the employer could terminate nonprobationary employees for "just cause." In addition, the handbook expressly required that security guards maintain accurate time records. I would find that the defendant-employer acted within the terms of the handbook in discharging the plaintiff, who, having arrived late for work, submitted inaccurate time records that concealed his tardiness. Because the case presents no genuine issue of material fact, the circuit court properly granted the defendant's motion for summary judgment.

The handbook distributed by the defendant to its security guards contained the prefatory warning, "Violation of any of the following policies will lead to disciplinary action, up to and including dismissal." Section E of the handbook stated, "All time cards and sign-in log books must reflect correct dates and times worked." Section J, pertaining to discipline, provided in pertinent part:

> "After an employee has completed the probationary period, such employee shall not be suspended, discharged or otherwise disciplined without just cause, just cause to in-

clude but not be limited to the following: continuing poor performance on the job, whether due to inefficiency, loafing, carelessness or incompetency; dishonesty or other misconduct in connection with work; incivility; insubordination, and serious or persistant [sic] infraction of reasonable rules promulgated by management relating to the operation of the store or the health or safety of employees."

The majority opinion does not question the defendant's authority, under the terms of the employee handbook, to discharge a guard who commits misconduct by maintaining inaccurate time records. (142 Ill. 2d at 169.) The majority believes, however, that a question of fact remains because it is unclear whether the plaintiff's actions were not simply inadvertent. The majority's analysis ignores the plain import of the plaintiff's admissions and misconstrues the provisions of the employee handbook.

The present case would pose a question of fact if, for example, the plaintiff denied that he was late on the workday at issue, or if he denied submitting incorrect time records for that day. But the plaintiff has acknowledged that he was late for work, and that he did submit false time records. The plaintiff cannot create a question of fact simply by insisting that his state of mind is in dispute, for under section E of the handbook an employee's intent is not an issue.

On this record, the trial judge properly granted the defendant's motion for summary judgment. The plaintiff acknowledged that the entries he made for August 2, 1983, on the time card and sign-in log were incorrect. Section E of the employee handbook could not have expressed more clearly the requirement that security guards maintain accurate time records. In addition, the handbook provided that violation of its provisions could result in discharge. The employee's violation was in this

case manifest, and the defendant acted within its authority in dismissing the plaintiff.

The majority observes that the plaintiff stood to gain less than $5 through his tardiness and submission of incorrect time records. (142 Ill. 2d at 157.) Apparently the majority wishes to suggest that the defendant's discharge of the plaintiff was unduly harsh, and that a more lenient sanction would have been appropriate. Although the plaintiff would have improperly gained only a slight amount of money had his misconduct gone undetected, the real and potential costs incurred by the defendant as a result of the plaintiff's misconduct were much greater. As the appellate court observed, the plaintiff's work as a security guard placed him in the sensitive position of protecting the defendant's employees and property, and those responsibilities made prompt attendance and accurate time-keeping particularly important. (189 Ill. App. 3d at 456.) The defendant is entitled to require that its security guards maintain accurate records of the hours they have worked, and the handbook issued to the guards contained an explicit statement of that rule.

In view of the plaintiff's admissions that he was late for work on the day in question and that he submitted inaccurate time records for that day, it is clear that the plaintiff committed "misconduct" within the meaning of sections E and J of the employee handbook. The defendant acted within its authority in dismissing the plaintiff for that violation of its rules. For those reasons, I respectfully dissent.

CHIEF JUSTICE MORAN joins in this dissent.