**Keith GIBB, Plaintiff–Appellant,**

v.

**WORLD BOOK, INC., Defendant– Appellee.**

**Keith GIBB, Plaintiff–Appellant,**

v.

**John SCOTT, Defendant–Appellee.**

No. 93–3344.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1994.

Decided July 11, 1994.

---

Richard Dooling, Omaha, NE, argued (Mary Anne, William E. Moench and Kathryn S. Render, on the brief), for appellant.

Bruce Dayton Livingston, St. Louis, MO, argued, for appellee.

Before MAGILL, Circuit Judge, and FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Keith Gibb appeals the district court's[1] entry of summary judgment in favor of World Book on Gibb's claim that World Book breached an employment contract. He also appeals the court's summary judgment in favor of John Scott on Gibb's claim that Scott

---

1. The Honorable Catherine D. Perry, United States Magistrate Judge for the Eastern District of Missouri, presided over these proceedings with the parties' consent pursuant to 28 U.S.C. § 636(c) (1988).

tortiously interfered with his legitimate business expectations. We affirm the district court.

## I. BACKGROUND

Gibb, a Canadian citizen, began working for World Book in 1968. After a series of promotions, he eventually became the branch manager in the St. Louis area and signed his first written contract in January 1978. At that time, he moved to Missouri. He signed a superseding contract in 1981, which was followed by a series of addenda, the last of which was signed in November 1987. The contracts and addenda were signed in Chicago, which is where World Book's headquarters are located. Gibb's territory varied during his tenure as branch manager, but consisted primarily of counties in both Illinois and Missouri. The 1981 contract specified that it could be terminated with or without cause by either party, and none of the addenda changed this provision. Gibb's immediate supervisor, John Scott, operated from an office located in Louisiana.

In May 1987, World Book distributed a policy manual to its employees. The manual covered a wide variety of topics, including termination procedures. The opening paragraph to the termination procedures states:

> To ensure fairness and uniformity, the Company has established a series of procedures that must be followed before any World Book field employee may be terminated. The Company reserves the right to skip one or more of these progressive disciplinary steps, depending upon the seriousness of the conduct in question.

Beginning in 1983, Scott began criticizing Gibb's practice with regard to the assigning of leads[2] and Gibb's failure to follow the company's lead policy. In February 1986, Scott issued Gibb a written warning for various violations of the company's lead policy. In July 1988, Scott recommended that Gibb be terminated due to Gibb's continued violations of policies and directives with regard to leads.

Gibb took advantage of the company's "Open Door Policy" and initiated an appeal directly with World Book's chairman. The investigator appointed by the chairman encountered difficulty determining whether Gibb had violated the lead policy because Gibb's records were rather poor; however, the state of the records constituted a violation of company policy, and the decision to terminate Gibb was upheld.

Gibb sued World Book, alleging that the company had failed to follow every step of the progressive discipline procedure outlined in the policy manual. He also sued his supervisor, alleging that Scott disliked him, attacked him in letters to company officials, and changed his sales area. These actions, according to Gibb, tortiously interfered with his business relations with World Book.

The district court determined that Illinois law governed the contract claim and that Missouri law governed the tort claim. The court then determined that though Illinois law allowed for the possibility that an employee handbook might constitute a binding contract, World Book's policy manual was not sufficiently definite to qualify as a contract. The court also determined that summary judgment in favor of Scott on the tort claim was appropriate because there was no evidence that any of Scott's actions lacked justification. Gibb appeals.

## II. DISCUSSION

### A. The Contract Claim

On appeal (as in the district court), the parties disagree over whether Missouri or Illinois law applies to the contract claim. Although we do not find any particular fault with the district court's conclusion that Illinois law governed this claim, we affirm because World Book was entitled to summary judgment regardless of which forum's laws applied.

Under Missouri law, Gibb would have been considered an at-will employee because his written contract with World Book was terminable by either party for any reason. The policy manual would not have altered this relationship because Missouri law does not permit an employee handbook to alter

---

2. Leads, generally speaking, are unsolicited contacts from potential customers.

the at-will relationship. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662–63 (Mo.1988) (en banc). Thus, if Missouri law applied, Gibb would lose his contract claim.

█ Under Illinois law, Gibb obtained no enforceable rights under his written contract. However,

> an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). World Book's policy manual fails *Duldulao*'s first requirement because it does not contain a clear promise that an employee would be justified in interpreting as an offer. Although the first sentence of the termination policy states that the company has established policies that *must* be followed, the very next sentence states that the company reserves the right to skip "one or more" of the steps depending upon the "seriousness of the conduct in question." The manual does not establish a method for determining which steps will be skipped, nor does it establish a hierarchy of "serious conduct" from which an employee can determine when steps in the termination process will be bypassed. Consequently, there is no clear promise to use the procedures, so the policy manual cannot be treated as an implied contract.

Gibb contends we should attach no meaning to the sentence purporting to preserve World Book's discretion because it renders the meaning of the entire paragraph too vague to have any meaning and thus does not clearly state what rights are possessed by the employees. This argument proceeds from the premise that the handbook represents a contract; however, the vagueness Gibb points to is precisely what prevents the handbook from making a definite promise sufficient to transform the handbook into a binding contract under *Duldulao*.

█ Gibb alternatively insists that the policy must be construed against World Book because it drafted the manual. Thus, relying on *Mitchell v. Jewel Food Stores*, 142 Ill.2d 152, 154 Ill.Dec. 606, 568 N.E.2d 827 (1990), he reasons that he is entitled to a jury trial to determine whether his conduct was "serious." The flaw in Gibb's reasoning is that rules of contract construction are not applied to the handbook until *after* it has been determined that an implied contract was created. There is no call for construing the handbook's terms against World Book because the handbook did not constitute a contract.

In *Mitchell*, the employment manual promised that after an employee completed a probationary period, "such employee shall not be suspended, discharged or otherwise disciplined without just cause, just cause to include ... dishonesty or other misconduct in connection with work...." *Id.*, 154 Ill.Dec. at 607, 568 N.E.2d at 828. This language created a contractual right: an employee could not be fired without just cause. *See also Frank v. South Suburban Hosp. Found.*, 256 Ill.App.3d 360, 195 Ill.Dec. 489, 494, 628 N.E.2d 953, 958 (1993) (discussing *Mitchell*). Mitchell was fired for submitting an incorrect time card, but contended that because it was an honest mistake it did not constitute "other misconduct" that could be equated with cause sufficient to justify his termination. The Illinois Supreme Court determined that, under the contractual obligation created by the handbook, if "plaintiff's actions constituted a mistake and not misconduct, then defendant would not have had, according to the manual, just cause to terminate plaintiff's employment." *Mitchell*, 154 Ill.Dec. at 613, 568 N.E.2d at 834. Thus, whereas the defendant in *Mitchell* established a standard for terminating its employees and procedures that had to be followed, World Book has done neither. Accordingly, World Book's policy manual does not contain a clear promise as required by *Duldulao* and no contract was created by its issuance.

## B. The Tort Claim

As with the contract claim, the parties disagree over whether Missouri or Illinois law applies to the tort claim against Scott. We again conclude that the outcome of this inquiry is not relevant; Gibb contends that he cannot succeed if Missouri law applies,[3] and we conclude that Gibb cannot succeed if Illinois law applies.

■ The elements of tortious interference with a business expectancy are "(1) the existence of a valid business expectancy by plaintiff, (2) the defendant's knowledge of the expectancy, (3) the defendant's intentional and unjustified interference which prevents the realization of the business expectancy, and (4) damages." *Chapman v. Crown Glass Corp.*, 197 Ill.App.3d 995, 145 Ill.Dec. 486, 492, 557 N.E.2d 256, 262 (1990). Gibb's status as an at-will employee qualifies as a valid business expectancy, *id.*, 145 Ill.Dec. at 495, 557 N.E.2d at 265, and Scott, as Gibb's supervisor, obviously knew of the expectancy. However, as Gibb's supervisor, Scott had a qualified privilege "to use [his] business judgment and discretion on behalf of [World Book]." *HPI Health Care v. Mount Vernon Hosp.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 24, 545 N.E.2d 672, 677 (1989). "A defendant who is protected by a privilege, however, is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *Id.*, 137 Ill.Dec. at 25, 545 N.E.2d at 678. Thus, the "qualified privilege does not apply where officers act *solely* for their own gain or *solely* for the purpose of harming plaintiff since such conduct is not undertaken to further the corporation's interest." *Mittelman v. Witous*, 135 Ill.2d 220, 142 Ill.Dec. 232, 246, 552 N.E.2d 973, 987 (1989) (emphasis in original). In carrying his burden of proving that Scott is not entitled to this privilege, Gibb was required to specifically plead the basis for his contention that Scott acted without justification. *HPI Health Care*, 137 Ill. Dec. at 24–25, 545 N.E.2d at 677–78.

■ Gibb's complaint alleges that Scott interfered with his business expectation of continued employment by changing his sales territory and inducing World Book to fire him, and that these actions were motivated by Scott's ill-will toward Gibb. In support of these contentions, Gibb relies principally on 1) deposition testimony from World Book's president to the effect that Scott and Gibb did not like each other, 2) an affidavit from a co-worker averring that he was told that Scott did not like Gibb and expressing his belief that Scott changed Gibb's sales territory in order to hamper his effectiveness as a manager, and 3) an affidavit from another co-worker indicating that Scott was angry because Gibb was not at a meeting and that Scott said he would "get" Gibb for not showing up. These items demonstrate that Scott did not like Gibb; however, they do not create an issue of fact as to whether or not Scott induced World Book to fire Gibb solely for personal gain or out of a desire to harm Gibb, as required by *Mittleman*. Furthermore, the first affiant expresses no basis for his "belief" that Scott acted out of personal malice in altering Gibb's sales territory and therefore is of no effect pursuant to Fed. R.Civ.Pro. 56(e) (requiring affidavits "be made on personal knowledge" and "show affirmatively that the affiant is competent to testify to the matters stated therein."). The event described by the second affiant demonstrates Scott's dissatisfaction with Gibb arising from a work-related incident and does not demonstrate that Scott took any actions unrelated to the company's interests. Finally, Gibb's claim that Scott's actions with respect to his termination were unrelated to World Book's business interests is belied by the fact that Gibb appealed Scott's decision to the company chairman, and the chairman's independent investigation revealed grounds sufficient to terminate Gibb's employment.[4]

---

**3.** We accept this statement, which appears in Gibb's brief, as correct. In doing so, we express no view on the premise underlying Gibb's concession; namely, that the elements of tortious interference with business expectations are more demanding under Missouri law than they are under Illinois law.

**4.** Gibb attempts to favorably compare this case to that presented in *Vajda v. Arthur Andersen & Co.*, 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343 *appeal denied*, 153 Ill.2d 570, 191 Ill.Dec. 630, 624 N.E.2d 818 (1993). Without detailing the facts present in that case, we note that the defendant clearly acted out of a desire to

## III. CONCLUSION

We conclude that, regardless of whether Missouri or Illinois law controls the claims presented in this case, no issues of material fact need be resolved and the district court's summary judgment in favor of World Book was proper. We affirm.

---

harm the plaintiff and was not acting out of a concern for the company's interests. *See id.,* 191 Ill.Dec. at 974, 624 N.E.2d at 1352.